STATE of Wisconsin, Plaintiff-Respondent,

v.

Randy D. STAFFORD, Defendant-Appellant.

Court of Appeals

*No. 02–0544–CR. Submitted on briefs April 23, 2003.—Decided
June 11, 2003.*

2003 WI App 138

(Also reported in 667 N.W.2d 370.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert G. LeBell* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager,* attorney general, and *Maura F.J. Whelan,* assistant attorney general.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. BROWN, J. Randy D. Stafford appeals from the judgment of conviction for second-degree sexual

assault of a child and the orders denying his motions for postconviction relief and for reconsideration. Among other things, Stafford alleges on appeal that the mental health professional who conducted a psychological assessment of him, which was incorporated into the presentence investigation report (PSI) and admitted into evidence at the sentencing hearing, had a conflict of interest due to the fact that she had treated the victim in the case for the six months prior to her assessment of Stafford. Stafford submits that this conflict of interest is a new factor justifying the modification of his sentence. We conclude that the mental health professional did have a conflict of interest that was not recognized by the parties or the court until after sentencing and that this conflict of interest frustrated the purpose of Stafford's original sentence. We also conclude that the trial court erred in determining that this new factor did not warrant modification of Stafford's sentence. Accordingly, we reverse and remand for resentencing.

¶ 2. The facts in this appeal are as follows. In June 2000, Stafford was charged with three counts of second-degree sexual assault of a child, in violation of Wis. Stat. § 948.02(2) (2001–02).[1] Stafford pled guilty to one count, and the other two counts were dismissed and read in for sentencing purposes. The trial court ordered a presentence investigation and the probation agent required Stafford to submit to a psychological assessment. Marikathryn Nooe, M.S.E., the Sexual Abuse Treatment Program coordinator at Reach Counseling Services, conducted the assessment of Stafford and her

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

report, dated January 3, 2001, was incorporated into the PSI and submitted into evidence at the sentencing hearing.

¶ 3. At the sentencing hearing, Stafford's attorney informed the court of several corrections to the PSI, which she had obtained from the presentencing meetings that she and her paralegal had held with Stafford. Stafford and his attorney did not make any objections or corrections to the portions of the PSI referring to the Nooe assessment, or to the assessment itself. In addition to the PSI and Nooe's written assessment, the court considered several victim impact statements filed by the victim and her parents, letters from concerned members of the community and from Stafford's wife, and the transcripts of interviews both with another adolescent girl who had been involved with Stafford and with her parents. Stafford also submitted a brief letter report prepared by a psychologist who had conducted an evaluation and performed some short-term treatment of Stafford at the behest of his attorney. The court heard testimony from the victim and her father; Stafford did not allocute. The court sentenced Stafford to ten years in prison. This was contrary to the recommendations of the parties and the presentence investigator, all of whom had recommended probation of varying lengths.

¶ 4. Stafford filed a postconviction motion. Stafford argued that he had been sentenced on the basis of inaccurate information in violation of his due process rights, that his attorney had been constitutionally ineffective with respect to Stafford's exercise of his allocution right, and that new factors justified resentencing. Both the due process and new factors arguments were based on what Stafford asserted were inaccuracies in Nooe's written assessment.

891

¶ 5. In January 2002, the court held a postconviction motion hearing. At the hearing, Stafford's attorney in a separate civil case arising out of the same facts as are involved in the criminal case at bar, testified that during the course of discovery in the civil matter, she learned that Nooe had treated the victim in the case for the emotional issues caused by the sexual abuse perpetrated by Stafford. According to this attorney, Nooe treated the victim from June 28, 2000, until May 17, 2001. Based on this testimony, Stafford argued that Nooe's treatment of the victim, which occurred prior to her assessment of Stafford, created a theoretical and actual conflict of interest which influenced her assessment of Stafford and tainted the sentencing process. The trial court denied the motion, concluding that it had not solely relied on Nooe's report in making its sentencing decision. Stafford subsequently filed a motion for reconsideration and the court once again denied the motion. This appeal followed.

¶ 6. On appeal, Stafford alleges, inter alia, that his sentence should be modified on the basis of a new factor. Stafford contends that Nooe's treatment of the victim for the six months prior to his assessment created a conflict of interest that "hopelessly compromised" her objectivity and, hence, her assessment of Stafford. Stafford maintains that Nooe's conflict of interest was not revealed to him or the court prior to sentencing and the bias from Nooe's assessment tainted the sentencing court's consideration of his character and its need to protect the public from Stafford and, therefore, modification of his sentence is warranted. The State contends that Stafford failed to demonstrate that Nooe had a conflict of interest and, as a result, we need not even address Stafford's new factor claim.

Therefore, before we apply the two-step new factor analysis to this case, we will discuss Nooe's alleged conflict of interest.

¶ 7. The State contends that Stafford did not demonstrate that Nooe had conducted her assessment for forensic sentencing purposes instead of for the purpose of treatment. According to the State, there is simply no conflict in assessing the *suitability* of treatment for the offender.

¶ 8. The State, however, misses Stafford's point. Stafford is arguing that Nooe's assessment was compromised because she was serving two masters—the victim and the court—and she failed to disclose her dual service to anyone. The precise reason why Nooe undertook the assessment is irrelevant. The fact remains that Nooe's report, regardless of whether it was for the purpose of treatment or for forensic sentencing purposes, was intended to be before the trial court at sentencing. As a sentencing tool, the report must be accurate, reliable and objective.

¶ 9. While we acknowledge that the case is not directly on point, we addressed a related concern in *State v. Suchocki*, 208 Wis. 2d 509, 561 N.W.2d 332 (Ct. App. 1997), and we find the reasoning in that case persuasive. In *Suchocki*, the presentence investigation report writer was married to the prosecuting attorney. *Id.* at 513. The defendant argued that this relationship compromised the objectivity of the PSI and, thus, violated his due process right to be sentenced on reliable and accurate information. *See id.* at 518. We held that the marital relationship was sufficient to call into question the objectivity of the PSI as a matter of

893

law and, at the least, raised serious questions as to the fairness of the sentencing process to the defendant. *Id.* at 520.

¶ 10. We reasoned that the core issue in the case was whether the PSI writer could have been influenced by the relationship in forming impressions regarding the defendant and in making recommendations to the court, "the attitudes of a prosecutor are likely to operate differently upon a PSI writer who has a marital relationship with the prosecutor than upon a PSI writer having no significant relationship with the prosecutor." *Id.* at 519. We explained that the reasons for an agent's impressions could operate at a subjective level of which the report's author is unaware. *Id.* at 520. We then acknowledged the importance of the PSI to the sentencing process and recognized that the integrity of the sentencing process demands that the report be accurate, reliable and, above all, objective and concluded that the PSI should have been struck. *See id.* at 518, 520.

██ .

¶ 11. These same principles apply to the facts of this case. Here, the purpose of Nooe's assessment, like the purpose of the PSI, was to provide the trial court with information it could use at sentencing. As *Suchocki* teaches, in order to protect the integrity of the sentencing process, the court must have a reliable and accurate information base. The hallmark of accuracy is objectivity. Hence, it is not merely the existence of contact between Nooe and the victim that concerns us. It is that Nooe could have been influenced by her extensive treatment relationship with the victim in forming her impressions regarding Stafford and in making her recommendations to the court that we find so troublesome. The information, attitude and impres-

894

sions Nooe received from the victim could have impacted her assessment at either a conscious or a subconscious level. Because Nooe's impressions and recommendations could have been subjectively influenced, we conclude that her dual service calls into question her own objectivity, the accuracy of her assessment and the overall fairness of Stafford's sentencing process.[2]

¶ 12. We now turn to the application of the two-step new factor test. To obtain sentence modification, a defendant must establish that (1) a new factor exists, and (2) the new factor justifies sentence modification. *State v. Franklin*, 148 Wis. 2d 1, 8, 434 N.W.2d 609 (1989). Whether a fact or set of facts constitutes a new factor presents a legal issue which we decide de novo. *Id.* Whether a new factor justifies sentence modification, however, presents an issue for the trial court's

---

[2] We believe that it is important to note that Nooe is not a licensed independent family counselor, social worker, psychologist or psychiatrist. Had Nooe been licensed, she would have been subject to a code of ethics or conduct that would have prohibited her from engaging in the dual relationship. *See, e.g.,* WIS. ADMIN. CODE § MPSW 20.02(13) (prohibiting social workers from engaging in dual relationships that may impair the credentialed person's objectivity or create a conflict of interest); WIS. ADMIN. CODE § PSY 5.01(17) (providing that a failure of psychologists to avoid dual relationships or relationships that may impair one's objectivity or create a conflict of interest constitutes unprofessional conduct). While we are not in a position to tell the trial courts what to do in this particular circumstance, this case provides a good example of why licensing in general and a code of ethics in particular should be a condition precedent to any professional observation the trial court may take into account.

discretionary determination, subject to our review under the erroneous exercise of discretion standard. *Id.*

¶ 13. A new factor is a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of the original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties. *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975). Further, a new factor is "an event or development which frustrates the purpose of the original sentence. There must be some connection between the factor and the sentencing— something which strikes at the very purpose of the sentence selected by the trial court." *State v. Michels*, 150 Wis. 2d 94, 99, 441 N.W.2d 278 (Ct. App. 1989).

¶ 14. Hence, to be a new factor, Nooe's treatment of the victim must have been unknown to both the parties and the court at the time of sentencing and must frustrate the intent behind the original sentence. We address these two elements in turn.

¶ 15. It is clear that Nooe's potential conflict of interest was unknown to all of the parties prior to sentencing. A thorough review of the record reveals that the information pertaining to Nooe's treatment of the victim was not disclosed in Nooe's written assessment, nor was it called to Stafford's or the court's attention prior to sentencing. It was not until after sentencing, at the postconviction motion hearing, when Stafford's attorney in the civil matter established that Nooe had treated the victim and assessed Stafford at the same time. The State argues that there are serious

factual uncertainties surrounding Nooe's assessment that undercut Stafford's conflict of interest argument. However, the State's assertions are purely speculative ruminations made in hindsight and unsupported in the record. We will not address them. We conclude that Noe's duality was unknown at the time of sentencing.

¶ 16. Furthermore, it is beyond question that the court relied on Nooe's assessment during sentencing. In the course of its discussion of Stafford's character, the sentencing court repeatedly referred to and directly quoted from Nooe's assessment. Specifically, the court highlighted the portion of Nooe's opinion explaining that Stafford demonstrated little victim empathy. The court also quoted her clinical impressions virtually verbatim, emphasizing Nooe's determinations that Stafford had a well-developed defense system, which included dishonesty and placing subtle and overt blame on others for his situation, and that his grooming of his victim was extensive. In addition, the court noted Nooe's conclusion that Stafford was a pedophile, a conclusion which, the State now concedes, was error.

¶ 17. The State contends that Nooe's conflict of interest does not frustrate the purpose of Stafford's sentence because it is not directly connected to the length of the sentence imposed. However, our review of the trial court's sentencing remarks demonstrates that the trial court factored Nooe's assessment of Stafford's character and danger to the community into the length of Stafford's sentence. While the court did not refer to Nooe's assessment by name in explaining its reasons for rejecting the recommendation of the parties and the PSI agent that Stafford receive probation, the court, once again, clearly turned to Nooe's assessment for support. The court explained that it was concerned

about the fact that Stafford apparently did not understand the seriousness of his offense or the effect of his conduct on the victim and the victim's family. The court further reasoned that a long period of incarceration was necessary to send a message to the community and to Stafford that individuals must accept responsibility for their actions; they cannot blame others or look the other way. Finally, the court stated that it was concerned about the protection of the public and it felt "that if Mr. Stafford is allowed back into the community he will immediately begin cultivating another relationship with another minor female for the reason that I don't think he understands the problem." These conclusions flow directly from Nooe's assessment. We therefore conclude that Stafford has demonstrated that a new factor exists.

¶ 18. Having established that Nooe's conflict of interest constitutes a new factor, we now turn to the second part of the test: whether the new factor mandates modification of Stafford's sentence. In concluding that Nooe's conduct did not constitute a new factor justifying modification of Stafford's sentence, the trial court noted that it had applied the three primary sentencing criteria—severity of the offense, character of the defendant, and public safety—and then stated that in considering those factors it had not "placed substantial reliance" on Nooe's assessment. The court recalled that it had primarily relied on all of the documents that had been filed prior to sentencing in addition to the Nooe assessment. The State makes a similar argument on appeal. However, as we explained above, the trial court's own words at the sentencing hearing belie these assertions.

898

¶ 19. The law appropriately recognizes that sentences may be based on what is unknowingly incomplete or inaccurate information, and, if they are, that there should be some mechanism to correct a resulting injustice. Here, Nooe's treatment of the victim prior to her assessment of Stafford undermines our confidence in the objectivity and accuracy of her report and, as a result, the fairness of the sentencing process to Stafford. We, therefore, conclude that the trial court erroneously exercised its discretion in determining that a modification of Stafford's sentence was not justified. Accordingly, we reverse and remand for resentencing.

*By the Court.*—Judgment and orders reversed and cause remanded with directions.