STATE of Wisconsin, Plaintiff-Respondent,

v.

Jose A. TRUJILLO, Defendant-Appellant-Petitioner.

Supreme Court

*No. 2003AP1463–CR. Oral argument December 7, 2004.—
Decided April 21, 2005.*

## 2005 WI 45

(Also reported in 694 N.W.2d 933.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Suzanne L. Hagopian,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. N. PATRICK CROOKS, J. Petitioner Jose Trujillo (Trujillo) appeals an order of the court of appeals, affirming the circuit court's denial of his motion for sentence modification under Wis. Stat.

§ 809.30(2)(h) (2001–02).[1] The Kenosha County Circuit Court, Judge S. Michael Wilk presiding, held that a reduction in the maximum penalty for the crime of burglary, which resulted from the truth-in-sentencing provisions of 2001 Wis. Act 109 (TIS-II), does not amount to a new factor in regard to a sentence modification motion, where the original sentence was imposed in accord with 1997 Wis. Act 283 (TIS-I). Trujillo appeals this decision because he claims that the reduction of the maximum penalty permitted by TIS-II, from the sentence imposed on him on the basis of a higher permitted maximum in TIS-I, is highly relevant to the imposition of his original sentence and, thus, a new factor.

¶ 2. We agree with the State of Wisconsin (State) that TIS-II's reduced maximum confinement for the same TIS-I felony does not constitute a new factor when a defendant moves for the modification of a sentence imposed under TIS-I. The legislature has not mandated the retroactive application of the reduced penalties, but has provided an adequate remedy by enacting Wis. Stat. § 973.195.[2] We conclude that al-

---

[1] Unless otherwise indicated all references to Wisconsin Statutes are to the 2001–02 edition.

[2] Wisconsin Stat. § 973.195 states, in relevant part:

(1g) Definition. In this section, "applicable percentage" means 85% for a Class C to E felony and 75% for a Class F to I felony.

(1r) Confinement in Prison. (a) An inmate who is serving a sentence imposed under s. 973.01 for a crime other than a Class B felony may petition the sentencing court to adjust the sentence if the inmate has served at least the applicable percentage of the term of confinement in prison portion of the sentence. If an inmate is subject to more than one sentence imposed under this section, the sentences shall be treated individually for purposes of sentence adjustment under this section.

though Trujillo's initial confinement time for burglary exceeded the TIS-II maximum, this change was not

(b) Any of the following is ground for a petition under par. (a):

1. The inmate's conduct, efforts at and progress in rehabilitation, or participation and progress in education, treatment, or other correctional programs since he or she was sentenced.

3. A change in law or procedure related to sentencing or revocation of extended supervision effective after the inmate was sentenced that would have resulted in a shorter term of confinement in prison or, if the inmate was returned to prison upon revocation of extended supervision, a shorter period of confinement in prison upon revocation, if the change had been applicable when the inmate was sentenced.

4. The inmate is subject to a sentence of confinement in another state or the inmate is in the United States illegally and may be deported.

5. Sentence adjustment is otherwise in the interests of justice.

(c) Upon receipt of a petition filed under par. (a), the sentencing court may deny the petition or hold the petition for further consideration. If the court holds the petition for further consideration, the court shall notify the district attorney of the inmate's petition. If the district attorney objects to adjustment of the inmate's sentence within 45 days of receiving notification under this paragraph, the court shall deny the inmate's petition.

. . . .

(g) Except as provided under par. (h), the only sentence adjustments that a court may make under this subsection are as follows:

1. If the inmate is serving the term of confinement in prison portion of the sentence, a reduction in the term of confinement in prison by the amount of time remaining in the term of confinement in prison portion of the sentence, less up to 30 days, and a corresponding increase in the term of extended supervision.

2. If the inmate is confined in prison upon revocation of extended supervision, a reduction in the amount of time remaining in the period of confinement in prison imposed upon revocation, less than up to 30 days, and a corresponding increase in the term of extended supervision.

716

highly relevant to the imposition of his TIS-I sentence. In so holding, "we continue to employ existing 'new factor' jurisprudence for TIS-I sentences," *State v. Crochiere,* 2004 WI 78, ¶ 2, 273 Wis. 2d 57, 681 N.W.2d 524, and therefore we reaffirm rather than overrule this court's decision in *State v. Hegwood,* 113 Wis. 2d 544, 335 N.W.2d 399 (1983), and the court of appeals' decisions in *State v. Torres,* 2003 WI App 199, 267 Wis. 2d 213, 670 N.W.2d 400, and *State v. Longmire,* 2004 WI App 90, 272 Wis. 2d 759, 681 N.W.2d 534. Accordingly, we affirm the order of the court of appeals.

I

¶ 3. Wisconsin shifted its sentencing scheme from indeterminate to determinate when TIS-I went into effect on December 31, 1999. Wis. Stat. §§ 973.01(1) and (2). The use of indeterminate sentencing, prior to TIS-I, guaranteed that a convicted defendant would serve for a stated number of years, but that the parole board would determine how much of that sentence was served in prison.[3] *State v. Gallion,* 2004 WI 42, ¶ 28, 270 Wis. 2d 535, 678 N.W.2d 197.

¶ 4. TIS-I was the first of two truth-in-sentencing acts passed by the Wisconsin Legislature. The second act, TIS-II, became effective on February 1, 2003, and has modified TIS-I. Under TIS-I, "a circuit court was required to impose a bifurcated sentence consisting of a term of confinement in prison followed by a term of extended supervision whenever it sentence[d] a person

---

[3] According to Wis. Stat. § 302.11(1), an inmate would be entitled to release after serving two-thirds of his or her sentence. Furthermore, Wis. Stat. § 304.06(1)(b) states that an inmate becomes eligible for parole after serving one-quarter of his or her sentence.

to 'imprisonment in the Wisconsin state prisons.' " *State v. Cole,* 2003 WI 59, ¶ 16, 262 Wis. 2d 167, 663 N.W.2d 700 (quoting Wis. Stat. § 973.01(1)).[4] Additionally, TIS-I provided that those serving a bifurcated sentence were not eligible for parole, and eliminated the possibility for a reduction in confinement time for good behavior. Wis. Stat. §§ 973.01(4) and (6).[5] "With limited exceptions, § 973.01 removed all statutory provisions that might serve to reduce an inmate's confinement based on the inmate's rehabilitation." *State v. Champion,* 2002 WI App 267, ¶ 7, 258 Wis. 2d 781, 654 N.W.2d 242 (footnote omitted).

¶ 5. After TIS-I was drafted, the legislature established the Criminal Penalties Study Committee (CPSC) to make recommendations and to propose additional TIS legislation. In order to give the CPSC enough time to complete its task, the legislature created an 18–month window between the date the legislature passed TIS-I and the date it was to go into effect. *Cole,* 262 Wis. 2d 167, ¶ 41; *see also* Michael B. Brennan, Thomas J. Hammer, Donald V. Latorraca, *Fully Imple-*

---

[4] Wisconsin Stat. § 973.01(1) provides, in relevant part:

Bifurcated Sentence Required. Except as provided in sub. (3), whenever a court sentences a person to imprisonment in the Wisconsin state prisons for a felony committed on or after December 31, 1999, the court shall impose a bifurcated sentence that consists of a term of confinement in prison followed by a term of extended supervision under s. 302.113.

[5] Wisconsin Stat. § 973.01(4) states, in relevant part: "No good time; extension or reduction of term of imprisonment. A person sentenced to a bifurcated sentence under sub. (1) shall serve the term of confinement in prison portion of the sentence without reduction for good behavior. . . ."

Wisconsin Stat. § 973.01(6) states: "No Parole. A person serving a bifurcated sentence imposed under sub. (1) is not eligible for release on parole under that sentence."

*menting Truth-in-Sentencing,* Wisconsin Lawyer, Nov. 2002, at 11; *see also* Wisconsin Legislative Council Information Memorandum 98–11, LRB-3154/1 (June 24, 1998). Although the CPSC finished its report on the necessary supplementation of TIS-I, the legislature did not enact these suggestions until after TIS-I became effective. *Cole,* 262 Wis. 2d 167, ¶ 41 (citing Brennan, *Fully Implementing Truth-in-Sentencing,* at 12).

¶ 6. TIS-II adopted many of the proposals from the CPSC report. Notably, TIS-II included the recommendation that "provisions in criminal statutes establishing minimum sentences (presumptive or otherwise) or mandatory consecutive sentences be repealed." Criminal Penalties Study Comm., Final Report on 1997 Wisconsin Act 283, Truth In Sentencing, at 63 (Aug. 31, 1999). CPSC stated that the reason for the change was "to allow courts 'maximum sentencing discretion to deal with the multitude of offenders who commit crimes and the multitude of ways in which they do so.' " *Cole,* 262 Wis. 2d 167, ¶ 42 (citing Criminal Penalties Study Comm., at 63). The effect of TIS-II was that many of the statutory classifications of felonies were revised in order to reduce the maximum sentences. The result caused by the delay between the enactment of TIS-I and TIS-II was that defendants convicted of felonies between December 31, 1999, and February 1, 2003, generally serve longer periods of confinement than the maximum provided for in TIS-II.

¶ 7. On April 9, 2002, Trujillo was charged with four crimes: second degree sexual assault of an unconscious victim, fourth-degree sexual assault, criminal trespass to a dwelling, and disorderly conduct. Pursuant to a plea agreement, Trujillo pled guilty to the crimes of burglary, a Class C felony, and fourth-degree sexual assault, a Class A misdemeanor, on July 22,

2002. The circuit court sentenced Trujillo to a term of eight years of confinement and five years of extended supervision for the felony burglary conviction, and a consecutive incarceration term of nine months for the misdemeanor sexual assault.

¶ 8. Before TIS-I, burglary was a Class C felony with a maximum penalty of 10 years imprisonment. Under TIS-I, burglary remained a Class C felony, but the maximum penalty was increased to 15 years of imprisonment, of which up to ten years could be ordered as initial confinement. TIS-II made burglary a Class F felony with a maximum penalty of 12.5 years. Under this penalty scheme, the term of initial confinement may not exceed seven years and six months. Thus, under TIS-I, Trujillo was sentenced to six months more initial confinement than was possible for the same offense under TIS-II.

¶ 9. Trujillo brought a postconviction motion on April 8, 2003, seeking modification of his burglary sentence pursuant to Wis. Stat. § 809.30(2)(h).[6] At a hearing for such relief on May 14, 2003, the circuit court denied the motion, and determined that this court's decision in *Hegwood* controlled, and that "the change in the statute does not effect the penalties created by the former statute unless the legislature specifically and expressly abrogates the penalties and indicated that it would relate back in some fashion." Trujillo appealed that decision to the court of appeals, where the decision of the circuit court was summarily affirmed. In a brief order, the court of appeals held that,

---

[6] In his postconviction motion, Trujillo asked the circuit court to modify only the confinement time of his burglary sentence. Therefore, we do not address his confinement time for sexual assault.

based upon its prior decision in *Torres*,[7] "the reduction in the criminal penalty for an offense affected by the truth-in-sentencing provisions contained in TIS-II, does not constitute a new factor. . . ." We accepted review and now affirm.

II

¶ 10. It is well established that a circuit court has inherent authority to modify a sentence. *Hegwood*, 113 Wis. 2d at 546. This inherent power can be used to prevent the continuation of unjust sentences and must be exercised within defined parameters. *Crochiere*, 273 Wis. 2d 57, ¶¶ 11–12. One such parameter to modify a sentence is through the showing of a new factor.[8] *Id.*, ¶ 13.

¶ 11. Whether a new factor exists is a question of law, which we review de novo. *State v. Lechner*, 217 Wis. 2d 392, 424, 576 N.W.2d 912 (1998). "The existence of a

---

[7] *State v. Torres*, 2003 WI App 199, 267 Wis. 2d 213, 670 N.W.2d 400, raised the same issue that was before the court of appeals in this case—whether a reduction in the maximum penalty for a TIS-II crime constitutes a new factor for the circuit court to consider during a hearing on a sentence modification motion concerning a TIS-I crime. The court of appeals did not issue its order in this case until after we decided on the petition for review in *Torres*. Upon our denial of review in *Torres*, the court of appeals in this case affirmed the circuit court's denial of sentence modification.

[8] Additional parameters found by this court: " '[A] court has the power to correct formal or clerical errors or an illegal or a void sentence at any time.' Also, a court has the inherent authority to modify a sentence if . . . the sentence is 'unduly harsh or unconscionable.' " *State v. Crochiere*, 2004 WI 78, ¶ 12, 273 Wis. 2d 57, 681 N.W.2d 524 (citations omitted).

721

new factor does not, however, automatically entitle the defendant to relief." *Hegwood,* 113 Wis. 2d at 546. The question of whether the sentence warrants modification is left to the discretion of the circuit court. *Id.* We will not overrule that decision unless the court's discretion was erroneously exercised. *Lechner,* 217 Wis. 2d at 424.

¶ 12. We also address issues regarding the interpretation of TIS legislation and Wis. Stat. § 973.195. Our analysis of such issues also involves a question of law which we review de novo. In *Meriter Hospital Inc. v. Dane County,* 2004 WI 145, 277 Wis. 2d 1, 69 N.W.2d 627, we stated:

> The interpretation of a statute presents a question of law, which we review de novo. *State v. Williams,* 198 Wis. 2d 516, 525, 544 N.W.2d 406 (1996). Although we consider this question independent of the decisions of the circuit court and the court of appeals, we nevertheless benefit from their analyses. *Meyer v. Sch. Dist. of Colby,* 226 Wis. 2d 704, 708, 595 N.W.2d 339 (1999).
>
> When interpreting a statute, the primary objective "is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 662, 681 N.W.2d 110. Knowing this, the court's analysis should begin with the plain language of the statutory text. *Id.,* ¶ 45. If the language of the statute is clear on its face, the court should apply the statute using the common and generally accepted meanings of the terms. *Fox v. Catholic Knights Ins. Soc.,* 2003 WI 87, ¶ 19, 263 Wis. 2d 207, 219, 665 N.W.2d 181. With an unambiguous statute, the court need not consult extrinsic sources of interpretation. *Kalal,* 271 Wis. 2d 633, ¶ 46.

*Meriter,* 277 Wis. 2d 1, ¶¶ 12–13.

¶ 13. We first address the issue of new factors. We define a new factor as "an event or development which frustrates the purpose of the original sentence," *Champion,* 258 Wis. 2d 781, ¶ 4, and recognize it to be more than a change in circumstances since the time of sentencing. *Crochiere,* 273 Wis. 2d 57, ¶ 14. Specifically, we have held:

> [T]he phrase "new factor" refers to a fact or set of facts *highly relevant* to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.

*Rosado v. State,* 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975) (emphasis added). As previously noted, to qualify for a sentence modification based on a new factor, the defendant must show: (1) a new factor exists; and (2) the new factor warrants modification of his sentence. *State v. Franklin,* 148 Wis. 2d 1, 8, 434 N.W.2d 609 (1989).

¶ 14. Case law governing sentence modification based on a new factor is well settled. *Champion,* 258 Wis. 2d 781, ¶ 4. Wisconsin courts have reached the conclusion that many of the circumstances presented were not sufficient to establish a new factor.[9] *See*

---

[9] Courts in Wisconsin have not found a new factor to be any of the following:

[A]n inmate's desire to testify at a post-conviction hearing regarding his side of the story, *Rosado,* 70 Wis. 2d at 288; the introduction of sentencing guidelines recommending a different sentence than the one a convicted defendant received, *State v. Macemon,* 113 Wis. 2d 662, 669, 335 N.W.2d 402 (1983); disparity in sentencing

*Crochiere,* 273 Wis. 2d 57, ¶ 15. While there have been some cases where new factors have been identified,[10] there have been no cases involving TIS legislation where the reduction in penalties has been considered highly relevant to the imposition of sentence and, thus, a new factor.

¶ 15. With the above principles in mind, we turn to Trujillo's argument. He contends that a post-sentencing reduction in the maximum penalty for a TIS-II crime should be considered a new factor by the circuit court for the purpose of a TIS-I sentence modification motion. Trujillo argues that the penalties un-

> between co-defendants, *State v. Toliver,* 187 Wis. 2d 346, 361–62, 523 N.W.2d 113 (Ct. App. 1994); an inmate's progress or rehabilitation while incarcerated, *State v. Kluck,* 210 Wis. 2d 1, 7–8, 563 N.W.2d 468 (1997) and *State v. Krueger,* 119 Wis. 2d 327, 335, 351 N.W.2d 738 (Ct. App. 1984); an inmate's response to treatment while incarcerated, *State v. Prince,* 147 Wis. 2d 134, 136–37, 432 N.W.2d 646 (Ct. App. 1988); an inmate's shorter-than-normal life expectancy, *State v. Ramuta,* 2003 WI App 80, ¶ 21, 261 Wis. 2d 784, 661 N.W.2d 483; or an inmate's post-sentencing declining health, *Michels,* 150 Wis. 2d at 99–100 [*State v. Michels,* 150 Wis. 2d 94, 99–100, N.W.2d 278 (Ct. App. 1989)].

*State v. Crochiere,* 273 Wis. 2d 57, ¶ 15 (footnote omitted).

[10] New factors for sentence modification have been identified in the following situations:

> [T]he untreatable nature of an inmate's mental condition is such that it "frustrated" a primary condition of his sentence, *State v. Sepulveda,* 119 Wis. 2d 546, 560–61, 350 N.W.2d 96 (1984); a potential conflict of interest of the mental health professional who conducted the psychological assessment of a convicted defendant for the sentencing court, *State v. Stafford,* 2003 WI App 138, ¶ 17, 265 Wis. 2d 886, 667 N.W.2d 370; and a convicted defendant's post-sentencing voluntary submission to revocation of his parole based on erroneous advice from his probation agent, *State v. Norton,* 2001 WI App 245, ¶ 16, 248 Wis. 2d 162, 635 N.W.2d 656.

*Id.,* ¶ 16.

der TIS-I did not adequately measure the legislature's intent as to the gravity and appropriate maximum sentence for a crime. He claims that the legislature's new assessment of crimes in TIS-II should be considered highly relevant to the imposition of his TIS-I sentence and, therefore, considered a new factor. As a result, Trujillo asks this court to distinguish our holding in *Hegwood* and overrule the court of appeals' decision in *Torres*.[11]

¶ 16. The State, conversely, argues that the new factor analyses in *Hegwood, Torres,* and *Longmire* are directly applicable. Based on these cases, the State argues that it is clearly established that the reduction in maximum confinement cannot be considered a new factor by the circuit court for the purpose of sentence modification.

¶ 17. We agree with the State's reliance on these holdings. First, in *Hegwood,* which predates TIS legislation, the defendant moved for a sentence modification of his 25–year sentence for a rape conviction and ten-year sentence for a conviction for armed robbery. When the legislature repealed the rape statute and created a sexual assault statute that redefined the crime and lessened the maximum penalty to 20 years, Hegwood argued that it constituted a new factor that the circuit court should consider. The circuit court and court of appeals denied his claim.

¶ 18. We decided in *Hegwood* that "[t]he reduction in the maximum penalty . . . is not highly relevant to the imposition of sentence and, therefore, does not

---

[11] Justice Butler's dissent wants us to go one step further and overrule *Hegwood, Torres,* and *Longmire.* We hold, however, that *Hegwood* and its progeny were correctly decided. We therefore apply the holding in those cases to the issues before us.

constitute a 'new factor.' " *Hegwood,* 113 Wis. 2d at 547. We also cited Wis. Stat. § 990.04[12] for the proposition that "the repeal of a statute shall not remit, defeat, or impair any criminal liability for offenses committed prior thereto unless such criminal liability is specifically and expressly remitted or abrogated by the repealing statute." *Id.* Because the defendant's criminal liability under the old statute was not expressly remitted by the statute's repeal, we held that "retroactive application of the reduced maximum penalty for sexual assault under the new statute is precluded." *Id.* at 548.

¶ 19. In *Torres,* the court of appeals applied the rationale from *Hegwood,* and extended it to cases involving TIS legislation. There, the defendant moved for sentence modification of his TIS-I conviction based on the post-sentencing reduction of the maximum penalty in TIS-II. Torres was convicted of operating a motor vehicle without the owner's consent, a Class E felony, in violation of Wis. Stat. § 943.23(3). He was sentenced to two years of initial confinement and two years of extended supervision. Under TIS-I, the crime had a maximum initial confinement time of two years. When he brought a motion for sentence modification after the enactment of TIS-II, however, the same crime had been changed to a Class I felony, and the maximum initial confinement was reduced to one year and six months.

¶ 20. In reaching its conclusion, the court of appeals determined that the holding of *Hegwood* applied

---

[12] Wisconsin Stat. § 990.04 states, in relevant part: "Actions pending not defeated by repeal of statute. The repeal of a statute hereafter shall not remit, defeat or impair any civil or criminal liability for offenses committed, penalties or forfeitures incurred or rights of action accrued under such statute before the repeal thereof. . . ."

to the circumstances presented in *Torres.* In regard to TIS legislation, the court of appeals held that "a change in the classification of a crime, which would result in a shorter sentence if the defendant were convicted under the new classification, is not a 'new factor' under our traditional model for sentence modification." *Torres,* 267 Wis. 2d 213, ¶ 7. In doing so, the court of appeals refused to distinguish *Hegwood.* It held: "Torres is in the same situation as *Hegwood*—there is no mandatory retroactive application of the lower penalty—so the *Hegwood* rule applies and the change in penalty is not a new factor." *Id.,* ¶ 12.

¶ 21. We are not persuaded by Trujillo's attempt to convince us to distinguish *Hegwood* and overrule *Torres.* We agree with the court of appeals in *Torres* that the holding in *Hegwood* should be applied to sentence modification motions involving TIS legislation. Trujillo does not present a sufficient reason as to why the legislature's two-stage implementation of TIS should be considered a new factor, especially since we have never held that the reduction of maximum penalties was a new factor in any other case, where the legislature has not mandated the retroactive application of the lower penalties.

¶ 22. We also conclude that Trujillo's argument, that we should hold that there is a new factor here, is not consistent with the plain language used by the legislature in the TIS-II enactments. If the legislature wanted the reduced maximum penalties to be considered in TIS-I sentence modification hearings, it could have provided that the reduced penalties in TIS-II shall have retroactive application. In effect, "the legislature had an opportunity to make the change retroactive, but chose not to do so." *Gallion,* 270 Wis. 2d 535, ¶ 74. We agree with the State that if the legislature had intended

the reduced maximum penalties of TIS-II to apply to crimes committed under TIS-I, it could have chosen not to increase the maximum confinement terms in TIS-I, or simply not implement TIS-I at all. Alternatively, the legislature could have inserted the TIS-II confinement terms into TIS-I, before TIS-I went into effect.

¶ 23. The court of appeals in *Torres* carefully reviewed the TIS legislation. The court noted that the reduced maximum penalties in TIS-II were not explicitly made applicable to TIS-I defendants in the act, thus indicating that it was giving deference to the legislature's authority to determine criminal behavior and the range of possible penalties. *See* Jeffrey Kassel, *Sentence Modification by Wisconsin Trial Courts,* 1985 Wis. L. Rev. 195, 216, discussing the *Hegwood* decision. "This deference may explain why the court interpreted the legislative intent behind section 990.04 of the Wisconsin statutes to prohibit not only a mandatory retroactive application of [a] reduction in maximum penalty, but to also prohibit a discretionary retroactive application." *Id.* (footnote omitted). We hold, in line with *Hegwood* and *Torres,* that the omission by the legislature of retroactive language in enacting TIS-II is significant, and we accord deference to that legislative decision.[13]

¶ 24. The court of appeals in *Torres* also referenced another reason for rejecting the defendant's modification motion based on the claimed new factor. It stated: "Wisconsin Stat. § 973.195 reflects the legislature's intent to create a separate and specific

---

[13] We emphasize that, by according deference to the legislative decisions in regard to TIS-I, TIS-II, and Wis. Stat. § 973.195, this court is not recognizing any restriction on the inherent power of the court, but rather we conclude that the legislative decisions do not result in a new factor.

statutory procedure for requesting a sentence reduction . . . whenever 'a change in law or procedure related to sentencing . . . effective after the inmate was sentenced that would have resulted in a shorter term of confinement' is the basis for the modification." *Torres,* 267 Wis. 2d 213, ¶ 9 (footnote omitted). .

¶ 25. Trujillo argues that Wis. Stat. § 973.195 applies to TIS-I offenders, but that the statute is not an adequate remedy, and that the court of appeals' decision in *Torres* was erroneous. We hold that the plain language of § 973.195 supports our determination here that new factor motions do not provide an appropriate method for dealing with TIS-II's reduction in maximum penalties. We agree with the court of appeals which stated in *Torres* that § 973.195 is a remedy "which provides the procedure for judicial review of a sentence when the law relating to sentencing changes," *id.,* ¶ 7, and we hold that it is an adequate remedy to address the circumstances resulting from the reduction in penalties from TIS-I to TIS-II.

¶ 26. The court of appeals has also held that the goal of TIS legislation is to create certainty of confinement at the time a sentence is imposed. *Champion,* 258 Wis. 2d 781, ¶ 13. In *Champion,* the defendant was sentenced under TIS-I and brought a sentence modification motion based on the claimed new factor that her rehabilitation was complete, and that with the elimination of parole there was no one else but the court to consider her early rehabilitation. The court, in reviewing the legislative history of TIS-I, held that the legislature did not intend such a remedy. *Id.* Instead, "the legislature intended that truth-in-sentencing create certainty as to the duration of confinement at the time a sentence is imposed, something fundamentally inconsistent with the open-ended availability of sentence

729

modification based on post-sentencing factors. . . ." *Id.*
In *Crochiere,* we discussed the reasoning in *Champion*
with approval and concluded that we will "continue to
employ existing 'new factor' jurisprudence for TIS-I
sentences . . ." while leaving open questions unique to
TIS-I not yet identified. *Crochiere,* 273 Wis. 2d 57,
¶¶ 2, 18–19.

¶ 27. We now turn to the court of appeals' recent
decision in *Longmire.* There, the defendant brought a
postconviction motion for sentence modification after
being sentenced under TIS-I for felony theft by a
contractor, a Class C felony punishable by no more than
$2500 and a maximum bifurcated sentence of 15 years.
Longmire was sentenced to 14 months of confinement,
ten years of extended supervision, and restitution.
Because TIS-II made Longmire's crime a Class G felony,
punishable by a maximum bifurcated sentence of only
ten years, Longmire argued that both the reduction in
maximum penalty and the rationale accompanying it,
constituted new factors for the circuit court to consider.
The court of appeals concluded:

> [J]ust as a change in the classification and maximum
> sentence of a crime is not a new factor for traditional
> sentence modification purposes, neither is the rationale
> underlying the change. The study committee's ratio-
> nale for recommending to the legislature that certain
> maximum terms of extended supervision be reduced is
> not a "fact or set of facts" relevant to the imposition of
> Longmire's sentence. Rather, it is an opinion on an
> aspect of correctional policy held by a committee cre-
> ated to conduct a study and make recommendations
> regarding the implementation of the Truth in Sentenc-
> ing Laws in Wisconsin.

*Longmire,* 272 Wis. 2d 759, ¶ 46 (citing Criminal
Penalties Study Comm., at 1). We agree with the court

of appeals that the rationale for post-sentencing changes by the legislature does not constitute a new factor for the purpose of sentence modification. *Id.*

¶ 28. We are also concerned about the possibility of opening the floodgates if we hold that the reduction in maximum sentences for TIS-II crimes constitutes a new factor. Between the time that TIS-I was enacted on December 31, 1999, and the date of TIS-II's implementation on February 1, 2003, more than 10,700 adults were admitted into Wisconsin's prison system with one or more TIS-I sentences. *See* Wisconsin Department of Corrections, *Truth in Sentencing,* at 5 (July 22, 2004). If we agree with Trujillo's new factor analysis, there is certainly the potential that most TIS-I offenders could seek a sentence modification on similar grounds. There could be many defendants, like Trujillo, that have a TIS-I initial confinement term that exceeds the TIS-II maximum. Additionally, there could be sentence modification motions from other inmates whose TIS-I confinement term did not exceed the TIS-II maximum. An inmate could argue, for example, that if the sentencing court thought his crime required a sentence in the "middle range", that the same court may have applied a lesser confinement term if it were applying the TIS-II "middle range" rather than that of TIS-I.

¶ 29. We reiterate that the decision to modify a sentence upon the finding of a new factor is left to the sound discretion of the circuit court. *Hegwood,* 113 Wis. 2d at 546. We again note, however, that "[i]f a circuit court concludes that the facts shown are insufficient to constitute a new factor, as a matter of law, it need go no further in its analysis to decide the inmate's motion." *Crochiere,* 273 Wis. 2d 57, ¶ 24. In this case, the circuit court explicitly stated that Trujillo did not prove the

731

existence of a new factor. In doing so, the circuit court did not have to go any further in denying Trujillo's motion for sentence modification.

## III

¶ 30. In sum, we agree with the State that TIS-II's reduced maximum confinement time for the same TIS-I felony does not constitute a new factor when a defendant moves for modification of a sentence imposed under TIS-I. The legislature has not mandated the retroactive application of the reduced penalties, but has provided an adequate remedy by enacting Wis. Stat. § 973.195. We conclude that although Trujillo's initial confinement time for burglary exceeded the TIS-II maximum, this change was not highly relevant to the imposition of his TIS-I sentence. In so holding, "we continue to employ existing 'new factor' jurisprudence for TIS-I sentences," *Crochiere,* 273 Wis. 2d 57, ¶ 2, and therefore we reaffirm rather than overrule this court's decision in *Hegwood,* and the court of appeals' decisions in *Torres* and *Longmire.* Accordingly, we affirm the order of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 31. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). Trujillo is asking the circuit court to consider whether his sentence pronounced under TIS-I, which exceeds the TIS-II maximum penalty, might, in the discretion of the circuit court, be modified in light of the reduced maximum penalties enacted under TIS-II. The circuit court refused to even consider the request. The majority opinion affirms the circuit court. I disagree. I would hold that a penalty reduction in TIS-II below the

sentence imposed under TIS-I is a new factor that permits, but does not require, the circuit court to modify the sentence.

¶ 32. The Wisconsin legislature substantially changed sentencing in Wisconsin with the enactment of the Truth in Sentencing statutes. Under indeterminate sentencing, which was in existence in this state for many years, a circuit court pronounced sentence and the parole board generally determined how much of the sentence was served in prison.[1] With the advent of Truth in Sentencing, a circuit court still pronounces a sentence, but parole is no longer available for those serving a prison sentence.

¶ 33. The effective date of the first Truth in Sentencing statute (TIS-I) was delayed to allow legislative change. Truth in Sentencing remained a legislative work in progress. Unfortunately, the legislature delayed enacting TIS-II. TIS-I went into effect December 31, 1999, even though everyone acknowledges that it was an unfinished work.[2]

---

[1] *State v. Gallion,* 2004 WI 42, ¶ 28, 270 Wis. 2d 535, 678 N.W.2d 197.

[2] Majority op., ¶¶ 4–6; Justice Butler's dissent, ¶ 53. For discussions of TIS-I, TIS-II, and the transition, see, *e.g.,* State of Wisconsin Criminal Penalties Study Committee Final Report (Aug. 31, 1999) (*available at* http://www.doa.state.wi.us/secy/index.asp); Thomas J. Hammer, *The Long and Arduous Journey to Truth-in-Sentencing in Wisconsin,* 15 Fed. Sent. R. 15 (2002); Michael B. Brennan et al., *Fully Implementing Truth-in-Sentencing,* 75 Wis. Lawyer 10 (Nov. 2000); Michael B. Brennan & Donald V. Latorraca, *Truth-in-Sentencing Comes to Wisconsin,* 73 Wis. Lawyer 16 (May 2000); Legislative Reference Bureau Analysis of 1997 Assembly Bill 351; Wisconsin Legislative Council Staff, Information Memorandum 98–11 (June 24, 1998).

¶ 34. TIS-II, effective February 1, 2003, contained, among other provisions, a significant reduction of the maximum penalties for many crimes.

¶ 35. Legislative penalties strongly influence a circuit court's sentencing decision; the statutory penalty is the legislature's gauge of the seriousness of the crime, and the legislature's gauge of the seriousness of the crime influences the sentence imposed by the court.

¶ 36. That persons sentenced under TIS-I could, and did, receive harsher penalties than those sentenced for the same crime under prior or subsequent laws is not in dispute. For example, Trujillo (as well as others who are governed by TIS-I) was sentenced to a greater prison term than those who committed the same crime but were sentenced under indeterminate sentencing or TIS-II. Under the basic principle of equal justice under law, it seems unfair to sentence persons to higher sentences pursuant to TIS-I during a three-year interim period of an unprecedented fluctuation in penalties, just because the legislature unfortunately (and unexpectedly) delayed enacting TIS-II and TIS-II's reduced penalties.

¶ 37. A circuit court has inherent power to modify a sentence.[3] The legislature may create means and methods for modification of sentences,[4] but, as the majority opinion states,[5] legislative enactments do not affect a court's inherent power to modify a sentence. This court, not the legislature, sets the boundaries of the circuit court's inherent power to modify sentences.

---

[3] *Hayes v. State,* 46 Wis. 2d 93, 101, 175 N.W.2d 625 (1970), *overruled in part by State v. Taylor,* 60 Wis. 2d 506, 210 N.W.2d 873 (1973).

[4] *See, e.g.,* Wis. Stat. §§ 973.19, .195.

[5] Majority op., ¶ 23 n.13.

¶ 38. A circuit court's inherent authority to modify a sentence is a discretionary power exercised within boundaries set by this court. This power is exercised to prevent the continuation of unjust sentences[6] or sentences that are unduly harsh or unconscionable.[7] A circuit court may correct formal or clerical errors or an illegal or void sentence.[8] A circuit court has discretionary authority to modify a sentence on the basis of a "new factor."

¶ 39. A legislative change in the penalty was not a new factor under indeterminate sentencing. The court so decided in *State v. Hegwood,* 113 Wis. 2d 544, 335 N.W.2d 399 (1983), over my dissent. The *Hegwood* interpretation of a circuit court's inherent power to modify sentences might have made sense under indeterminate sentencing. In indeterminate sentencing, the executive branch could consider the legislative reduction of penalties and could release prisoners before they served their full time.

¶ 40. *Hegwood* does not, however, make sense for sentencing under TIS-I when the legislature intended to reduce the maximum penalties (but did not), and additionally when the executive branch lost its power to modify prison sentences through parole.

¶ 41. There is no need, however, to overrule *Hegwood.* The *Hegwood* rule about a new factor can continue to apply to indeterminate sentences. *Hegwood* should not, however, be extended to TIS-I. I agree with Trujillo that *Hegwood* does not control the instant case because *Hegwood* presented a completely different fact situation.

---

[6] *State v. Franklin,* 148 Wis. 2d 1, 9, 434 N.W.2d 609 (1989).

[7] *Cresci v. State,* 89 Wis. 2d 495, 504, 278 N.W.2d 850 (1979).

[8] *Hayes v. State,* 46 Wis. 2d 93, 101, 175 N.W.2d 625 (1970).

¶ 42. Wisconsin is in a new sentencing era. This case demonstrates the court's need to reexamine a circuit court's inherent power to modify sentences. The court got it right in *State v. Crochiere*, 2004 WI 78, ¶ 26, 273 Wis. 2d 57, 681 N.W.2d 524: "[T]here may be additional new factors unique to TIS-I that we have not previously identified."[9]

¶ 43. The reduction of the maximum penalties in TIS-II is, I conclude, a new factor unique to TIS-I, because the legislature did not intend TIS-I to go into effect until TIS-II was adopted with reduced penalties. The undisputed history of TIS-I and TIS-II demonstrates that the reduction of the penalties was highly relevant to the legislature and that the reduction was not known at the time of Trujillo's original sentencing.[10]

¶ 44. A new factor does not automatically entitle a prisoner to modification of a sentence. Whether the sentence warrants modification is left to the discretion of the circuit court. I conclude that a circuit court should, in its inherent power and discretion, determine whether Trujillo's TIS-I sentence should be modified in light of TIS-II reduction of penalty.[11]

¶ 45. For the reasons set forth, I dissent.

[9] "In conclusion, we reaffirm that circuit courts have inherent authority to modify sentences on the basis of a new factor. Additionally, we continue to employ existing 'new factor' jurisprudence, while noting there may be additional factors unique to TIS-I that we have not previously identified." *State v. Crochiere*, 2004 WI 78, ¶ 26, 273 Wis. 2d 57, 681 N.W.2d 524.

[10] *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975).

[11] *State v. Torres*, 2003 WI App 199, 267 Wis. 2d 213, 670 N.W.2d 400, and *State v. Longmire*, 2004 WI App 90, 72 Wis. 2d 759, 681 N.W.2d 534, holding otherwise, should be overruled.

¶ 46. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

¶ 47. LOUIS B. BUTLER, JR., J. (*dissenting*). The majority concludes that TIS-II's reduced maximum confinement for the same TIS-I felony does not constitute a new factor when a defendant moves for a modification of a sentence imposed under TIS-I. The majority reasons that the legislature has not mandated the retroactive application of the reduced penalties, but has instead provided an adequate remedy by enacting Wis. Stat. § 973.195. Accordingly, the majority reaffirms this court's decision in *State v. Hegwood,* 113 Wis. 2d 544, 335 N.W.2d 399 (1983). Because *Hegwood* was wrongly decided, and because the change in the penalty structure from TIS-I to TIS-II could constitute a new factor, I respectfully dissent.

¶ 48. This court in *Hayes v. State,* 46 Wis. 2d 93, 102, 175 N.W.2d 625 (1970), held that sound public policy favors the exercise by a trial court of its power to amend, modify, and correct a judgment of sentencing, even though the service of the sentence has been commenced. The trial court's authority to change and modify its judgments was based on its "inherent power." *Id.* at 101. The court noted that the trial court should correct an unjust sentence within reasonable limits. *Id.* at 101–03. The inherent power to modify a sentence "must be exercised within the limits of sound sentencing discretion." *Id.* at 106.

¶ 49. The reasonable limits specified in *Hayes* were clarified by this court in *State v. Foellmi,* 57 Wis. 2d 572, 205 N.W.2d 144 (1973), when this court adopted the American Bar Association's *Standards Relating to Sentencing Alternatives and Procedures,* Part VI, § 6.1 (approved draft, 1968). That section provided:

**6.1 Authority to reduce: general.**

(a) It may be appropriate to authorize the sentencing court to reduce or modify a sentence within a specified time after its imposition or the final resolution of an appeal if new factors bearing on the sentence are made known. . . .

*Foellmi,* 57 Wis. 2d at 581. Thus, this court made clear that any modification of sentence could not be based on reflection alone but must be based on a new factor brought to the trial court's attention.[1] *Id.* at 582.

¶ 50. In *Rosado v. State,* 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975), this court defined "new factor" as "a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was in existence, it was unknowingly overlooked by all of the parties." A knowing failure to provide the information does not constitute a new factor. *Id.* at 288.

¶ 51. In *Hegwood,* this court decided that a reduction in the maximum statutory penalty is not a new

---

[1] Chief Justice Hallows believed that requiring new factors as a prerequisite to modifying a sentence is too restrictive of the power of a judge and a step backward in the criminal process. *State v. Foellmi,* 57 Wis. 2d 572, 585–86, 205 N.W.2d 144 (1973) (Hallows, C.J. concurring). According to Chief Justice Hallows, on reconsideration, if the trial court judge felt that he or she had been too harsh or had failed to give due weight to mitigating factors which should have been properly taken into account, then the judge should have the power to re-examine the sentence and modify it accordingly. *Id.* at 586.

I respectfully disagree with Chief Justice Hallows, as I fully embrace the new factor concept as stated in *Rosado v. State,* 70 Wis. 2d 280, 234 N.W.2d 69 (1975). His sentiment is correct, however, when applied to *Hegwood.*

factor justifying a modification of sentence. The court's analysis, however, was incorrect. The court based its decision on *Moore v. State,* 83 Wis. 2d 285, 310–311, 265 N.W.2d 540 (1978), which correctly determined that Wis. Stat. § 990.04 precludes an automatic reduction of a sentence because of the change in the maximum penalty for a particular offense. *See Hegwood,* 113 Wis. 2d at 548. The court then jumped to the conclusion that since an automatic reduction was not authorized under the statute, "the reduction in the maximum penalty . . . shall not operate to reduce the sentence for a previously committed offense." *Id.* But in *Hegwood,* the defendant was not asking for automatic reduction of his sentence. He was arguing that the change in penalty structure constituted a new factor under *Rosado. Hegwood,* 113 Wis. 2d at 549 (Abrahamson, J., dissenting). By missing the point of the defendant's argument, the court arrived at an erroneous conclusion. I would not follow *Hegwood*'s precedent.

¶ 52.　Instead, I would conclude that whether a change in the statutory maximum constituted a new factor depends on whether the trial court determined that the change was "highly relevant" to the imposition of the sentence.[2] If it was not, then no new factor would be shown. If it was, however, then the court would have to determine whether relief was appropriate. There is no logical reason or overriding public policy concern that justifies restricting the trial courts' inherent power in this fashion. As the court stated in *Hayes,* "[i]t is more important to be able to settle a matter right with a little uncertainty than to settle it wrong irrevocably." *Hayes,* 46 Wis. 2d at 105.

---

[2] The second prong of the *Rosado* analysis would already be met in this situation, as a new penalty structure would not be in existence until after the effective date of the new law, after the sentence was imposed.

739

¶ 53. The Truth in Sentencing bill was originally planned as one package. Michael B. Brennan, et al., *Fully Implementing Truth-in-Sentencing,* 75 Wisconsin Lawyer No. 11, 10–12 (Nov. 2002). TIS-I went into effect on December 31, 1999. Unfortunately, TIS-II did not become effective until February 1, 2003. TIS was not designed to increase the penalties for criminal offenses. See *id.* at 10; Thomas J. Hammer, *The Long and Arduous Journey to Truth-in-Sentencing in Wisconsin,* 15 Fed. Sent. R. 15 (2002); *see also* State of Wisconsin Criminal Penalties Study Committee Final Report, at 22 (August 31, 1999), *available at* http://www.doa.state.wi.us/docs_view2.asp?docid=42 (last visited Apr. 14, 2005). Yet, during the TIS-I phase, penalties were indeed increased so that the period of initial confinement under TIS-I would approximate the maximum penalties under the old indeterminate structure. *See* Legislative Reference Bureau Analysis of 1997 Assembly Bill 351 at 4–5. When TIS-II took effect, penalties were reduced to their appropriate level, based in large part on the work of the Criminal Penalties Study Committee (CPSC). Brennan, 75 Wisconsin Lawyer No. 11, at 12. Defendants who were sentenced under TIS-I were thus subject to greater maximum penalties than those sentenced under either indeterminate sentencing laws or TIS-II, even though the parties agree that the purposes in adopting TIS did not include increasing the penalty structure for criminal offenses.

¶ 54. People sentenced under TIS-I are not entitled to an automatic reduction of their sentences. *See Moore,* 83 Wis. 2d at 310–11. This is also true for people who were previously sentenced under indeterminate sentencing laws. If the trial court in a TIS-I case determines, however, that the change in the penalty structure created by the passage of TIS-II is highly

relevant to the imposition of a particular TIS-I sentence, then that court should, as part of its inherent power, have the opportunity to decide whether relief should be granted. If, on the other hand, the trial court were to conclude that the change in penalties was not highly relevant to the imposition of a particular sentence, then it is not a new factor and not a basis for sentence modification. I would overrule *Hegwood* and its progeny,[3] and reverse and remand this action to the trial court for a determination of whether the change in penalty structure constitutes a new factor *in this proceeding*.

¶ 55. For the foregoing reasons, I respectfully dissent.

■■■

[3] *See, e.g., State v. Longmire,* 2004 WI App 90, 272 Wis. 2d 759, 681 N.W.2d 534 and *State v. Torres,* 2003 WI App 199, 267 Wis. 2d 213, 670 N.W.2d 400.