STATE of Wisconsin, Plaintiff-Respondent,

v.

James Hubert TUCKER, Jr.,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2003AP1276–CR. Oral argument December 7, 2004.— Decided April 21, 2005.*

2005 WI 46

(Also reported in 694 N.W.2d 926.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Donald T. Lang,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

An amicus curiae brief was filed by *Walter Dickey, David E. Schultz, Michael E. Smith* and *Cecelia M. Klingele,* University of Wisconsin Law School, Madison, on behalf of the University of Wisconsin Law School, and oral argument by Walter Dickey.

¶ 1. N. PATRICK CROOKS, J. James Hubert

Tucker, Jr. (Tucker) seeks review of an order of the court of appeals, affirming the circuit court's denial of his motion for sentence modification under Wis. Stat. § 809.30(2)(h) (2001–02).[1] We review this case to determine whether the reductions in maximum penalties for the crimes of possession with intent to deliver cocaine and felony bail-jumping, set forth in the truth-in-sentencing provisions of 2001 Wis. Act 109 (TIS-II), constitute new factors in regard to a sentence modification motion, where the original sentences were imposed in accord with 1997 Wis. Act 283 (TIS-I). Additionally, we must determine whether a TIS-I offender can petition the circuit court for a sentence adjustment under Wis. Stat. § 973.195,[2] and whether a different approach is required for unclassified rather than classified felonies.

---

[1] Unless otherwise indicated all references to Wisconsin Statutes are to the 2001–02 edition.

[2] Wisconsin Stat. § 973.195 states, in relevant part:

(1g) Definition. In this section, "applicable percentage" means 85% for a Class C to E felony and 75% for a Class F to I felony.

(1r) Confinement in Prison. (a) An inmate who is serving a sentence imposed under s. 973.01 for a crime other than a Class B felony may petition the sentencing court to adjust the sentence if the inmate has served at least the applicable percentage of the term of confinement in prison portion of the sentence. If an inmate is subject to more than one sentence imposed under this section, the sentences shall be treated individually for purposes of sentence adjustment under this section.

(b) Any of the following is ground for a petition under par. (a):

1. The inmate's conduct, efforts at and progress in rehabilitation, or participation and progress in education, treatment, or other correctional programs since he or she was sentenced.

3. A change in law or procedure related to sentencing or revocation of extended supervision effective after the inmate was sentenced that would have resulted in a shorter term of confine-

¶ 2. We conclude, based on our holding in *State v. Trujillo,* 2005 WI 45, 279 Wis. 2d 712, 694 N.W.2d 933, that the reduced maximum confinement penalties under TIS-II do not constitute new factors when a defendant such as Tucker moves for the modification of sentences imposed under TIS-I. Although Tucker's initial confinement time for his TIS-I felonies exceeded the TIS-II maximum for each sentence, the changes are

ment in prison or, if the inmate was returned to prison upon revocation of extended supervision, a shorter period of confinement in prison upon revocation, if the change had been applicable when the inmate was sentenced.

4. The inmate is subject to a sentence of confinement in another state or the inmate is in the United States illegally and may be deported.

5. Sentence adjustment is otherwise in the interests of justice.

(c) Upon receipt of a petition filed under par. (a), the sentencing court may deny the petition or hold the petition for further consideration. If the court holds the petition for further consideration, the court shall notify the district attorney of the inmate's petition. If the district attorney objects to adjustment of the inmate's sentence within 45 days of receiving notification under this paragraph, the court shall deny the inmate's petition.

. . . .

(g) Except as provided under par. (h), the only sentence adjustments that a court may make under this subsection are as follows:

1. If the inmate is serving the term of confinement in prison portion of the sentence, a reduction in the term of confinement in prison by the amount of time remaining in the term of confinement in prison portion of the sentence, less up to 30 days, and a corresponding increase in the term of extended supervision.

2. If the inmate is confined in prison upon revocation of extended supervision, a reduction in the amount of time remaining in the period of confinement in prison imposed upon revocation, less than up to 30 days, and a corresponding increase in the term of extended supervision.

not highly relevant to the imposition of his original TIS-I sentences. The legislature never mandated the retroactive application of the reduced penalties. We further conclude that Wis. Stat. § 973.195 applies to TIS-I offenders and that the legislature has provided an adequate remedy by enacting that statutory provision. Whether the court is dealing with a classified or unclassified felony, the same rationale concerning new factor jurisprudence and the applicability of § 973.195 controls.

I

¶ 3. On February 20, 2002, Tucker pled guilty to two crimes: possession with intent to deliver cocaine (five grams or less), an unclassified felony[3] in violation of Wis. Stat. § 961.41(1m)(cm)1 (1999–2000), and felony bail jumping, a Class D felony in violation of Wis. Stat. § 946.49(1)(b) (1999–2000).

¶ 4. Based on his convictions under TIS-I, Tucker was subject to penalty maximums of 15 years for the unclassified possession charge and ten years for the bail-jumping charge. The Rock County Circuit Court, Judge Daniel T. Dillon presiding, sentenced him to

---

[3] Under TIS-I, an unclassified felony is any felony other than one specified in Wis. Stat. § 973.01(2)(b) 1. - 5. *State v. Jackson,* 2004 WI 29, ¶ 28, 270 Wis.2d 113, 676 N.W.2d 872. Unlike other felony offenses, which were classified as Class A, B, BC, D, or E felonies, with the maximum penalty for each class set forth in § 973.01, Tucker's crime for possession with intent to deliver less than five grams of cocaine came under Wis. Stat. § 961.41(1m)(cm)1 (1999–2000) which had a sentencing range independent of the felony classification system. *See State v. Cole,* 2003 WI 59, ¶ 15, 262 Wis. 2d 167, 663 N.W.2d 700.

Now, under TIS-II, Tucker's crime is classified as a Class F felony, pursuant to Wis. Stat. § 961.41(1m)(cm)(1).

consecutive sentences of ten years of initial confinement and five years of extended supervision for the unclassified possession conviction, and five years of initial confinement and five years extended supervision for the bail-jumping conviction.

¶ 5. The maximum penalties for the charges which Tucker was convicted were reduced under TIS-II. For the possession count, the maximum penalty was reduced from 15 years to 12 years and six months, with a maximum initial confinement time of seven years and six months. For the bail-jumping count, TIS-II reduced the maximum total sentence from ten years to six years, while the maximum initial confinement time was set at three years. As a result, under TIS-I, Tucker was sentenced to four years and six months more initial confinement than was possible for the same offenses under TIS-II.

¶ 6. On December 18, 2002, Tucker brought a postconviction motion for sentence modification. He argued that the reduction in the maximum penalties under TIS-II constituted new factors for the circuit court to consider during his sentence modification hearing. He did not bring a motion for sentence adjustment under Wis. Stat. § 973.195, since he believed that the provisions of the statute did not apply to individuals sentenced under TIS-I.

¶ 7. On May 1, 2003, the circuit court denied Tucker's motion. In an oral decision, the circuit court determined that *State v. Hegwood*, 113 Wis. 2d 544, 335 N.W.2d 399 (1983), did not allow the modification of a sentence based on the post-sentence reduction in penalty and, thus, did not constitute a new factor for the circuit court to consider.

¶ 8. On appeal, the court of appeals denied Tucker's sentence modification motion and found that

the penalty reductions set forth in TIS-II were not highly relevant to the imposition of his sentences. The court of appeals based its decision on *State v. Torres,* 2003 WI App 199, 267 Wis. 2d 213, 670 N.W.2d 400, which stated that the disparity in sentences between TIS-I and TIS-II is not a new factor to be considered in deciding motions for sentence modification.

¶ 9. We accepted review of the court of appeals' order and now affirm.

## II

¶ 10. In *Trujillo,* we held that whether a new factor exists is question of law, which we review de novo. *Trujillo,* 279 Wis. 2d 712, ¶ 11; *State v. Lechner,* 217 Wis. 2d 392, 424, 576 N.W.2d 912 (1998). We also held that "[t]he existence of a new factor does not, however, automatically entitle the defendant to relief." *Trujillo,* 279 Wis. 2d 712 (quoting *Hegwood,* 113 Wis. 2d at 546). Ultimately, the decision of whether the sentence should be modified is left to the sound discretion of the circuit court. *Hegwood,* 113 Wis. 2d at 546. We will not overrule a decision to modify a sentence unless the circuit court erroneously exercised its discretion. *Trujillo,* 279 Wis. 2d 712, ¶ 10; *Lechner,* 217 Wis. 2d at 424.

¶ 11. This case also presents questions of statutory interpretation. For guidance, we look to *Meriter Hospital Inc. v. Dane County,* 2004 WI 145, 277 Wis. 2d 1, 69 N.W.2d 627, where we discussed the standard of review applicable to issues of statutory interpretation. We stated:

The interpretation of a statute presents a question
of law, which we review de novo. *State v. Williams,* 198

703

Wis. 2d 516, 525, 544 N.W.2d 406 (1996). Although we consider this question independent of the decisions of the circuit court and the court of appeals, we nevertheless benefit from their analyses. *Meyer v. Sch. Dist. of Colby,* 226 Wis. 2d 704, 708, 595 N.W.2d 339 (1999).

When interpreting a statute, the primary objective "is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 662, 681 N.W.2d 110. Knowing this, the court's analysis should begin with the plain language of the statutory text. *Id.,* ¶ 45. If the language of the statute is clear on its face, the court should apply the statute using the common and generally accepted meanings of the terms. *Fox v. Catholic Knights Ins. Soc.,* 2003 WI 87, ¶ 19, 263 Wis. 2d 207, 219, 665 N.W.2d 181. With an unambiguous statute, the court need not consult extrinsic sources of interpretation. *Kalal,* 271 Wis. 2d 633, ¶ 46.

*Meriter,* 277 Wis. 2d 1, ¶¶ 12–13.

¶ 12.   In *Trujillo,* this court held that the reduction in maximum penalties for crimes that resulted from TIS-II does not constitute a new factor when a defendant moves for the modification of a sentence imposed under TIS-I. *Trujillo,* 279 Wis. 2d 712, ¶ 2. In applying the plain language used by the legislature in the TIS-II enactments, we also held that "if the legislature wanted the reduced maximum penalties to be considered in TIS-I sentence modification hearings, it could have provided that the reduced penalties in TIS-II shall have retroactive application." *Id.,* ¶ 21.

■

¶ 13.   This case similarly involves a motion for sentence modification, where the defendant's current penalties for possession with intent to deliver cocaine

and felony bail-jumping under TIS-I exceed the maximum penalties for those crimes under TIS-II. Accordingly, our decision in *Trujillo* is controlling. Thus, we conclude that a reduction in the maximum penalty under TIS-II is not a new factor and that the circuit court ruled correctly when it concluded that no new factor was present and therefore denied Tucker's motion for sentence modification.

■

¶ 14.   The present case, however, involves additional issues that *Trujillo* does not address. Here, we also must decide whether Wis. Stat. § 973.195 allows a TIS-I offender to petition the court for sentence adjustment. The State of Wisconsin (State) argues that § 973.195 does not apply to such offenders because § 973.195(1g) utilizes the TIS-II felony classification system to determine the "applicable percentage" of the term of initial confinement a person must serve in order to be eligible for sentence adjustment. In addition, the State raises several questions as to how a TIS-I offender's "applicable percentage" would be calculated under the statute. In contrast, Tucker relies primarily on the legislative history of § 973.195 to conclude that the statute does apply to TIS-I offenders.

¶ 15.   We begin by examining the text of the statute, which states that it applies to "[a]n inmate who is serving a sentence imposed under s. 973.01 for a crime other than a Class B felony[.]" Wis. Stat. § 973.195(1r). As recognized by both parties, a person serving a sentence under TIS-I is serving a sentence imposed under § 973.01. *See* Wis. Stat. § 973.01 (1999–2000). Thus, subsection (1r) of the sentence adjustment statute supports a conclusion that it applies to TIS-I offenders.

705

¶ 16. However, Wis. Stat. § 973.195(1g), which sets forth the "applicable percentage" of term of initial confinement a person must serve before being eligible for sentence adjustment, states: "In this section, 'applicable percentage' means 85% for a Class C to E felony and 75% for a Class F to I felony." Under TIS-I, felonies were classified into six categories, A-F, and the new nine-factor A-I felony classification was one of the main features of the TIS-II legislation.[4] As there were no F-I felonies under TIS-I, subsection (1g) would seem to support a conclusion that § 973.195 does not apply to persons sentenced under TIS-I. Furthermore, § 973.195(1g) does not explain how to calculate the "applicable percentage" for felonies that were unclassified under TIS-I.

¶ 17. Therefore, as the text of Wis. Stat. § 973.195 leads to two equally reasonable interpretations, we conclude that the statute is ambiguous and turn to the statute's history and other extrinsic sources to guide our analysis. As noted, under 2001 Wis. Act 109, § 9459, the effective date of TIS-II was February 1, 2003. However, certain provisions were made applicable only to crimes committed on or after February 1, 2003, by virtue of 2001 Wis. Act 109, § 9359. Section 973.195, the provision for sentence adjustment, was not included in this list of provisions first applicable to crimes committed on or after February 1, 2003. *See id.* This is a strong indication that the legislature intended that persons sentenced under TIS-I are able to take advantage of § 973.195, since the legislature easily could have limited the application of § 973.195 to crimes committed on or

---

[4] *Compare* Wis. Stat. § 939.50 (2003–04) *with* Wis. Stat. § 939.50 (1999–2000).

after February 1, 2003, as it did for numerous other provisions of 2001 Wis. Act 109.

¶ 18. An analysis of 2001 Wis. Act 109 by the Legislative Reference Bureau clearly supports the conclusion that persons sentenced under TIS-I are able to utilize the procedure set forth in Wis. Stat. § 973.195:

> Petitions for adjustment may be filed, beginning February 1, 2003, by any prisoner sentenced for a crime committed since the effective date of bifurcated sentencing (December 31, 1999). . . . Those convicted of crimes committed before December 31, 1999, may be eligible for parole consideration and are not permitted to petition under the sentence adjustment procedure.

Legislative Reference Bureau, *Wisconsin Briefs 02–7: Truth-in-Sentencing and Criminal Code Revision* 4 (Aug. 2002).

¶ 19. Furthermore, one of the grounds for sentence adjustment relates to the very changes brought about by TIS-II. Wis. Stat. sec. 973.195 provides that one of the grounds for sentence adjustment is:

> A change in law or procedure related to sentencing or revocation of extended supervision effective after the inmate was sentenced that would have resulted in a shorter term of confinement in prison or, if the inmate was returned to prison upon revocation of extended supervision, a shorter period of confinement in prison upon revocation, if the change had been applicable when the inmate was sentenced.

Wis. Stat. § 973.195(1r)(b)3.

¶ 20. As discussed previously in *Trujillo,* persons sentenced under TIS-I generally serve longer periods of confinement than those sentenced under either the old indeterminate system of sentencing or TIS-II as a result of the delay between the implementation of TIS-I

and TIS-II. One of the features of the TIS-II reclassification of felonies was that the initial period of confinement for crimes was changed so as to approximate the maximum time served under the indeterminate system of sentencing. Thus, the very act that changed the penalty structure for numerous offenses also provided a mechanism for adjusting sentences based on a change in law or procedure related to sentencing or revocation of extended supervision. This strongly supports the conclusion that the legislature intended the sentence adjustment provision to apply to TIS-I offenders.

¶ 21. Commentary following the enactment of TIS-II further supports that conclusion:

> As to whether the new statute will apply to prisoners sentenced for crimes occurring between Dec. 31, 1999, and Feb. 1, 2003, the Criminal Law Section's proposal provided grounds for a petition in light of a change in the law. This was precisely the group of persons that this provision was meant to include.

John A. Birdsall & Raymond M. Dall'Osto, *Problems with the New Truth-in-Sentencing Law,* Wisconsin Lawyer, Nov. 2002, at 13.

¶ 22. Accordingly, our analysis of Wis. Stat. § 973.195, as well as extrinsic sources, leads us to conclude that the legislature intended the sentence adjustment provision to apply to TIS-I offenders. We recognize that § 973.195(1g), which sets forth the "applicable percentage" of the term of initial confinement a person must serve before being eligible for sentence adjustment, utilizes the TIS-II felony classification scheme and does not indicate how to calculate the "applicable percentage" for a TIS-I sentence.

¶ 23. However, this problem is remedied by simply applying the TIS-II felony classification under Wis.

Stat. § 939.50 to persons sentenced under TIS-I for the limited purpose of determining the "applicable percentage" of a term of initial confinement in a Wis. Stat. § 973.195 petition for sentence adjustment. For instance, Tucker was convicted of felony bail jumping, pursuant to Wis. Stat. § 946.49(1)(b) (1999–2000). At the time he was convicted, his offense was a Class D felony. However, under TIS-II, the crime for which Tucker was convicted became a Class H felony. Wis. Stat. § 946.49(1)(b). Thus, while Tucker remains convicted of this classified felony, for purposes of determining what "applicable percentage" of his term of initial confinement he must serve in order to be eligible for sentence adjustment, we look to how the crime for which he was convicted is currently classified under TIS-II. That "applicable percentage" is then applied to the sentence originally imposed to determine if he is eligible to file a petition under § 973.195(1g).

¶ 24.   While this analytical framework will be effective in most cases where a TIS-I offender seeks sentence adjustment, we are also sensitive to the State's concerns as to how this procedure will affect an individual sentenced for an unclassified felony. However, most of the persons sentenced for TIS-I unclassified felonies will not encounter a problem because, like Tucker's conviction for possession with intent to deliver cocaine, almost all of the felonies which were previously unclassified under TIS-I have now been classified under TIS-II. Thus, in the vast majority of cases, a court will simply look to how the previously unclassified crime is classified under TIS-II in order to determine the "applicable percentage." There is no reason why the analysis we set forth today cannot apply to persons falling into this category.

## III

¶ 25. In sum, we conclude, based on our holding in *Trujillo,* that the reduced maximum confinement penalties under TIS-II do not constitute new factors when a defendant such as Tucker moves for the modification of sentences imposed under TIS-I. Although Tucker's initial confinement time for his TIS-I felonies exceeded the TIS-II maximum for each sentence, such changes are not highly relevant to the imposition of his original TIS-I sentences. The legislature never mandated the retroactive application of the reduced penalties. We further conclude that Wis. Stat. § 973.195 applies to TIS-I offenders, and that the legislature has provided an adequate remedy by enacting that statutory provision. Whether the court is dealing with a classified or unclassified felony, the same rationale concerning new factor jurisprudence and the applicability of § 973.195 controls.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 26. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). I dissent in the instant case for the reasons set forth in my dissent in *State v. Trujillo,* 2005 WI 45, 279 Wis. 2d 712, 694 N.W.2d 933.

¶ 27. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

¶ 28. LOUIS B. BUTLER, JR., J. (*dissenting*). For the reasons stated in my dissent in *State v. Trujillo,* 2005 WI 45, 279 Wis. 2d 712, 694 N.W.2d 933, I would overrule *Hegwood* and its progeny,[1] and reverse and

---

[1] *See e.g., State v. Longmire,* 2004 WI App 90, 272 Wis. 2d 759, 681 N.W.2d 534 and *State v. Torres,* 2003 WI App 199, 267 Wis. 2d 213, 670 N.W.2d 400.

remand this action to the trial court for a determination of whether the change in penalty structure by the creation of TIS-II constitutes a new factor *in this proceeding.*

¶ 29.   I therefore respectfully dissent.