STATE of Wisconsin, Plaintiff-Respondent,

v.

Jamie R. ANDERSON, Defendant-Appellant.

Court of Appeals

*No. 2014AP982–CR. Submitted on briefs May 15, 2015.
—Decided November 5, 2015.*

2015 WI App 92

(Also reported in 873 N.W.2d 82.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeremy Newman* and *Sara Kelton Brelie* of the *Frank J. Remington Center*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Kevin D. Croninger*, district attorney for Monroe County, Sparta, and the brief of *Gabe Johnson-Karp*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Lundsten, Sherman and Blanchard, JJ.

¶ 1. LUNDSTEN, J. The question here is whether sentence adjustment under Wis. Stat. § 973.195 is available to reduce confinement time for persons serving an enhanced misdemeanor prison term. As we explain further in the discussion section below, an enhanced misdemeanor prison term is imposed when (1) a defendant is convicted of a misdemeanor and is subject to penalty enhancement, such that a bifurcated sentence under Wis. Stat. § 973.01(1) is a possibility *and* (2) the court actually chooses to impose prison time. We conclude that persons serving an enhanced misdemeanor prison term are eligible for sentence adjustment under § 973.195. Accordingly, we reverse the circuit court.[1]

## *Background*

¶ 2. Anderson was charged with four misdemeanors, each as a repeater. Under a plea agreement, Anderson entered no contest pleas to two counts of misdemeanor battery, each as a repeater. The imprisonment maximum for each unenhanced misdemeanor count was nine months. *See* Wis. Stat. § 939.51(3)(a). Under the repeater statute, Wis. Stat. § 939.62(1)(a), the total maximum sentence for each count was increased to two years and, under

---

[1] This appeal was converted from a one-judge appeal to a three-judge appeal under Wis. Stat. Rule 809.41(3) (2013–14). All references to the Wisconsin Statutes are to the 2013–14 version because, for purposes of the dispute here, there are no differences that matter between the current version and the version that was in effect when Anderson committed the crimes on appeal here. Since *State v. Tucker*, 2005 WI 46, 279 Wis. 2d 697, 694 N.W.2d 926, a case central to our analysis, Wis. Stat. § 973.195(1r)(a) has been amended to include an exception relating to "positive adjustment time." We see no suggestion that this change matters.

WIS. STAT. § 973.01(2)(b)10., the confinement portion of Anderson's sentence was limited to 75% of his total sentence, that is, eighteen months.

¶ 3. Pursuant to a joint recommendation, the circuit court specified that Anderson would serve his imprisonment in the Wisconsin prison system. The court imposed one year of initial confinement and one year of extended supervision on each count, and ordered the sentences to run concurrently.

¶ 4. After serving 75% of the confinement portion of each concurrent sentence, Anderson submitted two petitions for sentence adjustment, one for each count. The circuit court denied the petitions in a form order with a short explanation attached. The court wrote that Anderson was not eligible for sentence adjustment under WIS. STAT. § 973.195 because relief under that statute is available only to defendants convicted of felonies.

### *Discussion*

### *A. Preliminary Issues And Observations*

¶ 5. Anderson argues that the circuit court wrongly concluded that enhanced misdemeanants, like him, who are serving confinement time in prison are not eligible for sentence adjustment under WIS. STAT. § 973.195. Before we address that question, we address some threshold issues and provide some cautionary observations.

¶ 6. **Forfeiture.** So far as we can tell, we could reject Anderson's arguments as forfeited because they are presented for the first time on appeal. Before the circuit court, with his sentence adjustment petitions,

Anderson submitted a short letter with one sentence merely asserting statutory eligibility. The remainder of Anderson's letter contained arguments as to why he deserved sentence adjustment. The State, however, does not argue forfeiture. To the contrary, the State asks us to address Anderson's new arguments on their merits because of the need for a published opinion on the topic. We agree there is a need and, therefore, choose to ignore forfeiture. *See Townsend v. Massey*, 2011 WI App 160, ¶ 23, 338 Wis. 2d 114, 808 N.W.2d 155 ("[T]he forfeiture rule is one of judicial administration, and appellate courts have the authority to ignore forfeiture when a case presents an important recurring issue.").

¶ 7. At the same time we note, in fairness to the circuit court, that our decision to address the merits of Anderson's new arguments means we are "blindsiding" that court with reversal based on arguments not presented to it, something we normally avoid. *See State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995) (stating the general rule that we "will not . . . blindside trial courts with reversals based on theories which did not originate in their forum").

¶ 8. **Mootness.** The parties agree that the issue presented is moot as to Anderson, but that we should address it nevertheless. As the State aptly explains:

> Although Anderson has now been released from confinement and would not benefit from a decision in his favor, this case presents an issue of significant public importance to misdemeanants, prosecutors, corrections officials, and the courts. And, given the timing of misdemeanants' petitions in relation to the termination of their confinement (usually within a few months of release, based on DOC's use of the 75% standard),

this situation will almost certainly continue to evade judicial review before any individual misdemeanant is released. Accordingly, under the rationale set forth in Anderson's brief . . ., and the established exceptions to the mootness doctrine, *see, e.g., In re Commitment of Schulpius,* 2006 WI 1, ¶ 15, 287 Wis. 2d 44, 707 N.W.2d 495, the State agrees that this case is as appropriate a vehicle as any to review the question presented.

We agree that it is appropriate to decide the question presented, even though it is moot as to Anderson.

¶ 9. **Enhanced misdemeanor *prison* term.** It may not be readily apparent that our decision does not apply to all persons convicted of enhanced misdemeanors. Rather, it applies to persons convicted of enhanced misdemeanors who actually receive an enhanced misdemeanor *prison* term. We flag this because we have used language in the past suggesting that all enhanced misdemeanor sentences must be bifurcated sentences that include prison time. For example, in *State v. Lasanske,* 2014 WI App 26, 353 Wis. 2d 280, 844 N.W.2d 417, *review denied,* 2014 WI 122, 358 Wis. 2d 603, 855 N.W.2d 694, an enhanced misdemeanor case, we wrote: "Lasanske was eligible for up to two years of imprisonment on each count to which he pled. *His sentence had to be bifurcated,* with no more than 75% of the total length of the bifurcated sentence as confinement and no less than 25% of the length of the term of confinement as extended supervision." *Id.,* ¶ 12 (emphasis added).

¶ 10. However, courts are not required to impose a bifurcated sentence, which would necessarily include prison time, on persons convicted of enhanced misdemeanors. For example, so far as we can tell, under WIS. STAT. § 973.02 the circuit court here could have chosen

152

to order Anderson to serve one year in jail with no extended supervision. Or, for that matter, the court could have imposed no confinement or less than one year of confinement on each count, which then would have required Anderson to serve any confinement time in jail, not in prison. *See* § 973.02. It was the court's decision to require Anderson to serve one year of confinement *and to require that he serve that time in prison* that resulted in the imposition of a bifurcated sentence and, in turn, gives rise to the question whether Anderson was eligible for sentence adjustment under WIS. STAT. § 973.195. *See* WIS. STAT. § 973.01(1) ("[W]henever a court sentences a person to imprisonment *in the Wisconsin state prisons* for . . . a misdemeanor committed on or after February 1, 2003, the court shall impose a bifurcated sentence under this section." (emphasis added)).

¶ 11. **Non-bifurcated misdemeanor sentences with confinement time served in prison**. This opinion does not address all situations in which misdemeanor confinement is served in prison. Here, the issue arises because the circuit court decided to impose a bifurcated sentence, including initial confinement in prison, on a defendant convicted of an enhanced misdemeanor. Likely much more common is the situation in which defendants are convicted of both felonies and misdemeanors, enhanced or unenhanced, and such defendants receive misdemeanor confinement time—that is, a non-bifurcated misdemeanor sentence—that must be served in prison *solely* because the defendant is also given felony prison time. *See* WIS. STAT. § 973.03(2) ("A defendant sentenced to the Wisconsin state prisons and to a county jail or house of correction for separate crimes shall serve all sentences whether concurrent or consecutive in the state pris-

ons."); *see also State v. Harris*, 2011 WI App 130, ¶¶ 1, 8–10, 337 Wis. 2d 222, 805 N.W.2d 386 (holding that misdemeanants given jail sentences who must serve such sentences in prison under § 973.03(2) are not entitled to good time under WIS. STAT. § 302.43 because such confinement time must be construed as "one continuous sentence [that] puts [the total sentence] squarely under the purview of WIS. STAT. § 973.01").

¶ 12. We draw attention to this topic for two reasons. First, to make clear that, contrary to some of Anderson's arguments, it is not helpful to simply distinguish between enhanced misdemeanants and unenhanced misdemeanants. Second, to emphasize that we address only the situation in which a defendant, convicted of an enhanced misdemeanor, is actually given a bifurcated sentence for that misdemeanor which, by definition, includes confinement in prison.

## B. Analysis Of The Question Presented

¶ 13. We are asked to resolve whether sentence adjustment, under WIS. STAT. § 973.195, is available to reduce confinement time for persons serving an enhanced misdemeanor prison term. The primary subsection at issue here is § 973.195(1r)(a), which reads, in pertinent part:

> CONFINEMENT IN PRISON. (a) Except as provided in s. 973.198, an inmate who is serving a sentence imposed under s. 973.01 for a crime other than a Class B felony may petition the sentencing court to adjust the sentence if the inmate has served at least the applicable percentage of the term of confinement in prison portion of the sentence.

Putting to the side the exceptions, which the parties seemingly agree do not apply here, this subsection

imposes two requirements that must be met before an inmate may petition for sentence adjustment. The inmate must:

1. be "serving a sentence imposed under s. 973.01"; and

2. have served the "applicable percentage of the term of confinement."

¶ 14. As to the first requirement, there is no dispute. WISCONSIN STAT. § 973.01 requires bifurcated sentencing for crimes committed after specified dates "whenever a court sentences a person to imprisonment in the Wisconsin state prisons." WIS. STAT. § 973.01(1). The statute explains that a "bifurcated sentence is a sentence that consists of a term of confinement in prison followed by a term of extended supervision." WIS. STAT. § 973.01(2). Persons, such as Anderson, who are convicted of enhanced misdemeanors and are ordered to serve confinement time in prison must receive a bifurcated sentence. Accordingly, the State appropriately concedes that "[a] sentence on an enhanced misdemeanor in which prison is ordered thus constitutes a 'sentence imposed under s. 973.01' for purposes of the sentence adjustment statute."

¶ 15. While the parties agree that Anderson satisfies the first requirement because he was serving a sentence imposed under WIS. STAT. § 973.01, they disagree as to whether Anderson, or other enhanced misdemeanants, can satisfy the second "applicable percentage" requirement. The parties' "applicable percentage" disagreement is in two parts. First, the parties disagree as to whether the "applicable percentage" language in WIS. STAT. § 973.195(1r)(a) is ambiguous as applied here. Second, if the "applicable percentage"

language is ambiguous, they disagree on how that ambiguity should be resolved. We address each topic below.

### 1. Whether There Is Ambiguity

¶ 16. Pertinent here, WIS. STAT. § 973.195(1r)(a) declares that "an inmate . . . may petition the sentencing court to adjust the sentence *if the inmate has served at least the applicable percentage* of the term of confinement in prison portion of the sentence" (emphasis added). The applicable percentages for TIS-II felons are found in § 973.195(1g), which reads: "In this section, 'applicable percentage' means 85% for a Class C to E felony and 75% for a Class F to I felony." The statutes do not identify an "applicable percentage" for enhanced misdemeanors.[2]

---

[2] As is common, we use the terms TIS-I and TIS-II. TIS-I refers to the first version of Truth-in-Sentencing enacted by 1997 Wis. Act 283, and TIS-II refers to the current substantially revised version of Truth-in-Sentencing enacted by 2001 Wis. Act 109. *State v. Stenklyft*, 2005 WI 71, ¶¶ 2–3, 16, 281 Wis. 2d 484, 697 N.W.2d 769. Readers desiring additional contextual information relating to TIS-I, TIS-II, and the adoption of the sentence adjustment statute, WIS. STAT. § 973.195, are advised to read *Stenklyft*, with particular attention to paragraphs 16 to 30.

The references in WIS. STAT. § 973.195(1g) to "a Class C to E felony" and "a Class F to I felony" are unmistakable references to the TIS-II penalty scheme. Neither indeterminate sentencing prior to TIS-I nor TIS-I included Class F to I felonies. *See Tucker*, 279 Wis. 2d 697, ¶ 16; *see also Stenklyft*, 281 Wis. 2d 484, ¶ 54 (relying on a Legislative Reference Bureau source for the proposition that inmates who receive indeterminate sentences are not eligible for sentence adjustment because those inmates may obtain early release through parole).

156

¶ 17. According to the State, this means that enhanced misdemeanor prison terms are not covered by the sentence adjustment statute because there is no "applicable percentage" for such terms of imprisonment. If we were writing on a clean slate, we might agree with the State. Instead, we agree with Anderson that *State v. Tucker*, 2005 WI 46, 279 Wis. 2d 697, 694 N.W.2d 926, leads to a different conclusion.

¶ 18. In *Tucker*, the question was whether prison inmates sentenced under TIS-I could benefit from the same sentence adjustment statute at issue here, WIS. STAT. § 973.195. And, as with Anderson here, it was undisputed that TIS-I inmates, like Tucker, satisfied the first requirement under § 973.195(1r). That is, TIS-I inmates like Tucker serve sentences imposed under WIS. STAT. § 973.01. *See Tucker*, 279 Wis. 2d 697, ¶ 15.

¶ 19. Like Anderson here, the stumbling block for Tucker was the fact that the "applicable percentage" provision was silent as to how it applied to Tucker's category of inmates. The *Tucker* court explained that the "applicable percentage" subsection, WIS. STAT. § 973.195(1g), uses a TIS-II felony classification system. *Tucker*, 279 Wis. 2d 697, ¶¶ 14, 16. More specifically, TIS-II has C to I felony classifications that do not match up with TIS-I's C to F felony classifications. *See id.*, ¶ 16. Thus, § 973.195(1g) did not provide an "applicable percentage" for TIS-I Class C to F felonies, which included Tucker's Class D felony.

¶ 20. The *Tucker* court acknowledged that the failure of WIS. STAT. § 973.195(1g) to specify the "applicable percentage" for TIS-I terms of confinement "would seem to support" the conclusion that sentence adjustment under § 973.195 was unavailable to persons serving TIS-I terms of confinement. *Tucker*, 279

Wis. 2d 697, ¶ 16. However, according to the *Tucker* court, this situation simply meant that the statute was ambiguous as to whether it applied to TIS-I inmates. *Id.*, ¶ 17. The State's appellate brief here accurately summarizes the court's reasoning: "In concluding that the statute was ambiguous, the *Tucker* court reasoned that because a felon sentenced under TIS-I was serving a bifurcated sentence under Wis. Stat. § 973.01(1), the statute could reasonably be construed to allow those offenders to petition for adjustment."

¶ 21. Stated more fully, the *Tucker* court concluded that, because Tucker satisfied the first requirement that he was "serving a sentence imposed under s. 973.01," thereby indicating eligibility, there was ambiguity as to whether Tucker could satisfy the second requirement that he had served the "applicable percentage" of his sentence. *See id.*, ¶¶ 15–17. That is the extent of the analysis. And, applying this analysis to inmates like Anderson, they are in the same situation as inmates like Tucker. Inmates serving enhanced misdemeanor prison terms meet the sentence-imposed-under-§ 973.01 requirement, thereby indicating eligibility, but the "applicable percentage" provision is silent as to the percentage of prison time such inmates must first serve before petitioning for sentence adjustment. Accordingly, following *Tucker*, we conclude that there is ambiguity as to whether persons serving enhanced misdemeanor prison terms can satisfy the "applicable percentage" requirement.

¶ 22. Before moving on, we comment on three parts of the State's no-ambiguity argument that we do not directly address above.

¶ 23. Focusing on Anderson's position, rather than on *Tucker*, the State contends that Anderson "side-steps" the fact that the "applicable percentage"

requirement is a distinct limitation. According to the State, Anderson's "applicable percentage" ambiguity argument "presupposes" ambiguity based simply on the fact that Anderson satisfies the first requirement —that is, that he be serving a sentence under Wis. Stat. § 973.01. This might be a valid criticism, but for *Tucker*, where the supreme court rejected what amounts to the same ambiguity arguments the State makes here.[3] That is, whatever validity there might be to the State's criticism of Anderson's position would apply equally to *Tucker*'s ambiguity analysis.

¶ 24. A different part of the State's no-ambiguity argument relies on *Seider v. O'Connell*, 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659, for the proposition that a statute may be ambiguous as applied in one circumstance and unambiguous as applied in another. Thus, the argument goes, just because Wis. Stat. § 973.195 is ambiguous as to TIS-I inmates does not

---

[3] Anderson correctly explains that the State's prior arguments were made in *Tucker*, but were more fully made in *Stenklyft*, 281 Wis. 2d 484. Indeed, the State's brief in *Tucker* expressly states that its full argument on this topic is set forth in its *Stenklyft* brief. Brief and Separate Appendix of Plaintiff-Respondent at 28 n.7, *Tucker*, 279 Wis. 2d 697 (No. 03–1276–CR). Our review of the briefing in *Tucker* and *Stenklyft* confirms that the criticism the State now directs at Anderson's ambiguity argument was embodied in the State's arguments in *Tucker* and *Stenklyft*, but was rejected in *Tucker*. *See* Brief of Plaintiff-Respondent in *Tucker* at 28–30; Brief-in-Chief and Appendix of Plaintiff-Appellant at 12–18, *Stenklyft*, 281 Wis. 2d 484 (No. 03–1533–CR); Reply Brief of Plaintiff-Appellant in *Stenklyft* at 2–5. For reasons not relevant here, although *Tucker* and *Stenklyft* were argued at the same time, the supreme court used *Tucker* to resolve the sentence adjustment question that matters here, and the court issued *Stenklyft* at a later date, resolving additional issues raised by that case.

mean it is ambiguous as to enhanced misdemeanants. This general proposition is plainly true. However, the State does not then explain why, *applying Tucker's reasoning,* the different circumstance here should lead to a different result.

¶ 25. Yet another part of the State's no-ambiguity argument seems to take the position that *Tucker* does not apply here because there is an absurdity argument that was not available in *Tucker*. If so, we are not persuaded. The State's absurd-results argument is based on a hypothetical in which two defendants each commit batteries, a Class A misdemeanor carrying a possible nine months of confinement. *See* WIS. STAT. §§ 940.19(1) and 939.51(3)(a). One defendant is convicted of an unenhanced misdemeanor and receives a jail sentence. The other defendant is a repeater and, thus, the nine-month maximum confinement is increased to eighteen months.[4] The repeater receives a sentence including prison time. According to the State, it would be absurd to afford the repeat offender the chance at reduced confinement under the sentence adjustment statute, but not afford this opportunity to the less dangerous non-repeater. The State points out that, "under some scenarios [the repeater] could serve nearly the same amount of time in confinement as his non-repeater counterpart, even if [the repeater's] initial period of confinement was longer." More specifically, the State contends that this might happen if the non-repeater receives a nine-month sentence and the repeater receives a twelve-month sentence and the repeater successfully petitions for

_____

[4] As explained in ¶ 2 in the text, repeater enhancement increases the total possible sentence to two years, but initial confinement is limited to eighteen months by WIS. STAT. § 973.01(2)(b)10.

sentence adjustment after serving just nine months under the 75% approach advocated by Anderson.

¶ 26. The flaw in the State's hypothetical is that it ignores substantial differences in the treatment of such misdemeanants. For example, the hypothetical treats as insignificant the fact that the repeater must fully serve nine months before even starting the sentence adjustment process by filing a petition. Moreover, after release, the repeater would be subject to supervision and possible revocation, whereas the non-repeater would simply be released. And, another fact ignored by the State is that the non-repeater, as a jail inmate, is eligible for early release under WIS. STAT. § 302.43, which could reduce the non-repeater's nine-month jail term by one-fourth. There are other factors that differentiate the repeater and the non-repeater in ways that undercut the State's absurdity argument, but what we say here is sufficient to reject that argument.

¶ 27. Having concluded that there is ambiguity as to whether inmates like Anderson are eligible for sentence adjustment under WIS. STAT. § 973.195, we turn to the parties' dispute as to how we should resolve this ambiguity.

2. Resolving The Ambiguity

██

¶ 28. Having concluded under the *Tucker* analysis that there is ambiguity as to whether the sentence adjustment statute applies to enhanced misdemeanor prison terms, we look to the sources the parties discuss to resolve that ambiguity.

¶ 29. We begin with a strong indication of the legislature's intent—a comparison of enhanced misdemeanants sentenced to prison with felons sentenced to

161

prison. Unlike the State's hypothetical, comparing a repeat misdemeanant sent to prison with a non-repeat misdemeanant sent to jail, the two categories we discuss here are subject to all or mostly all the same restrictions and benefits. For example, both enhanced misdemeanants sentenced to prison and felons sentenced to prison face the possible extension of confinement for poor prison conduct. *See* WIS. STAT. §§ 973.01(4) and 302.113(3). Both face supervision and possible revocation upon release. *See* §§ 973.01(2) and 302.113(9)(am). Neither are eligible for a "good time" reduction. *See* § 973.01(4).

¶ 30. Moreover, while the differences we discuss in ¶ 26 show why it is reasonable to authorize sentence adjustment for enhanced misdemeanants sentenced to prison, but not misdemeanants sentenced to jail, the similarities we describe in ¶ 29 show why it makes sense to treat enhanced misdemeanants and felons sentenced to prison the same when it comes to sentence adjustment. This proposition becomes even clearer when looking at an example of similarly sentenced inmates in these two categories. Suppose an enhanced misdemeanant and a felon both receive a total two-year sentence comprised of eighteen months of confinement and six months of extended supervision. Although both receive the same sentence, we know that the legislature considers the felon to have committed the more serious offense because even Class I felonies, the least serious class of felonies, carry with them higher maximum penalties than a repeater-enhanced Class A misdemeanor. Under the State's view, only the more serious offender, the felon, is eligible for sentence adjustment, even though both defendants received the same sentence. This makes no sense. To the contrary, the most sensible proposition is

that the legislature intended to afford the enhanced misdemeanant the same opportunity for sentence reduction as the felon.

¶ 31. In sum, a comparison of the severity of offenses and consideration of the similarities between enhanced misdemeanants and felons who are both sentenced to prison provide strong support for the view that the legislature intended to afford both categories of offenders the opportunity for sentence adjustment.

¶ 32. The State argues that context shows that enhanced misdemeanants like Anderson were "on the legislature's radar" when it created the sentence adjustment statute, and that this awareness, combined with the legislature's simultaneous failure to specify an "applicable percentage" for enhanced misdemeanants serving prison terms, shows the legislature's intention that sentence adjustment not apply to this category of inmates. More specifically, the State notes that within the same act, 2001 Wis. Act 109, the legislature amended WIS. STAT. § 973.01, requiring that some enhanced misdemeanor sentences be bifurcated between confinement time in prison and extended supervision, while, in the words of the State, "at the same time declining to modify WIS. STAT. § 973.195(1g) to provide any 'applicable percentage' for" this new category of bifurcated prison sentences.

¶ 33. Ordinarily, such reasoning would be persuasive. *See Storm v. Legion Ins. Co.*, 2003 WI 120, ¶ 29, 265 Wis. 2d 169, 665 N.W.2d 353 ("[W]hen the legislature enacts a new statute, it is presumed to know the new statute's relationship with existing and contemporaneously created statutory provisions, especially those directly affecting the statute."). However, here the reasoning runs up against the larger context of TIS-II and *Tucker*.

163

¶ 34. The State's on-the-legislature's-radar argument would have applied with greater force in *Tucker*. The class of inmates seemingly neglected by the legislature in *Tucker* was comprised of persons who were or would serve TIS-I prison terms. And, the legislature was acutely aware of TIS-I inmates. After all, 2001 Wis. Act 109 was *the fix for TIS-I*. However, the legislature's obvious awareness of TIS-I inmates, combined with the legislature's failure to specify an "applicable percentage" for such inmates, did not stop the *Tucker* court from concluding that TIS-I inmates are eligible for sentence adjustment. It follows that, for the State's on-the-legislature's-radar argument to work here, the legislature would have had to have been less mindful of TIS-I inmates than a relatively small category of prison inmates—those who would serve enhanced misdemeanor prison terms—a proposition we reject out of hand.

¶ 35. Looking beyond the statutory scheme, we find little guidance.

¶ 36. The State points to legislation and administrative action that followed 2001 Wis. Act 109. As to legislative action, the State points to modifications to Truth-in-Sentencing enacted in 2009 and 2011, including the enactment and then repeal of methods of obtaining early release, and related administrative rulemaking. For example, according to the State, this legislative activity included the creation and then later elimination of an early release mechanism that had a "similar practical effect" to Wis. Stat. § 973.195.[5]

¶ 37. As to administrative action, the State acknowledges that the Department of Corrections appar-

---

[5] *See* Wis. Stat. § 302.113(1) (2009–10), creating a "positive adjustment" time early release opportunity for non-violent inmates convicted of a Class F to I felony or a misdemeanor.

ently assumes that enhanced misdemeanant prison inmates like Anderson are eligible for sentence adjustment and, accordingly, the department currently facilitates sentence adjustment petitions for inmates like Anderson. For example, the department provides verification to courts that such petitioners have served sufficient time to be eligible for sentence adjustment, using 75% as the bench mark. The State speculates that the department's practice may be an outgrowth of the department's effort to give effect to the *other* early release mechanism described in the prior paragraph. We are uncertain what to make of this subsequent history argument.

¶ 38. On the one hand, the State may be suggesting that the legislative decision, in 2009, to create and then, in 2011, to eliminate a different earlier release mechanism indicates our legislature's intent, in 2001, that the sentence adjustment statute not apply to enhanced misdemeanor prison terms. The State seemingly reasons that this is true because the 2011 legislative action eliminated a different early release mechanism that arguably provided a statutory basis for a 75% "applicable percentage" for misdemeanants for purposes of the early release mechanism at issue here, sentence adjustment under Wis. Stat. § 973.195. On the other hand, the State may merely be making the point that the department's current practice of facilitating sentence adjustment petitions for enhanced misdemeanants means little because, in the words of the State, the department's practice "was *never* grounded in the statutory language of Wis. Stat. § 973.195, and was instead apparently extrapolated from DOC's reading of its authority" relating to a

different early release mechanism. Viewed either way, we fail to discern something that helps us resolve the ambiguity at hand.

¶ 39. As described by the State, the nature of the 2009 legislation does not rely on an assumption that the previously existing statutory scheme contained a 75% "applicable percentage" for misdemeanants *with respect to sentence adjustment.* It follows that no such assumed "applicable percentage" could have been eliminated in 2011. That is to say, we can discern no basis for the State's assertion that legislative activity in 2009 created an arguable statutory basis for a 75% standard for misdemeanants applicable to the sentence adjustment statute that was eliminated in 2011. If the State merely means to make the point that the department's practice is weak support for Anderson's interpretation, we agree. We do not rely on that practice to resolve ambiguity.

¶ 40. Turning to a different source, the State asserts that "contemporaneous analyses" of TIS-II by knowledgeable persons involved in recommending remedies for perceived shortcomings of TIS-I support the State's view that sentence adjustment does not apply to enhanced misdemeanor prison terms. However, we agree with Anderson that the contemporaneous analyses the State points to provide no such support.

¶ 41. We decline to detail all of the commentary the parties discuss. However, a representative example is contained in a footnote in an article, partly authored by Michael Brennan. The State correctly identifies then-Judge Brennan as a knowledgeable person and directs our attention to footnote 81 in "Brennan et al., *Fully Implementing Truth-in-Sentencing,* at 54 & n.81." The footnote reads: "While

166

inmates serving a bifurcated sentence for an enhanced misdemeanor *apparently may petition for a sentence adjustment,* the statute does not specify the applicable percentage of time that they must serve before petitioning and obtaining release." Michael B. Brennan, Thomas J. Hammer, Donald V. Latorraca, *Fully Implementing Truth-in-Sentencing,* Vol. 75, WIS. LAW., No. 11, at 10, 54 & 56 n.81 (Nov. 2002) (emphasis added). Rather than supporting the State's view, this language suggests that, at the time the sentence adjustment statute was enacted, knowledgeable persons assumed it did apply to enhanced misdemeanor prison terms. That last phrase in the footnote merely acknowledges the obvious—that there may be a problem in determining the "applicable percentage."

¶ 42. To sum up, we resolve ambiguity in favor of a category of prison inmates that is, for purposes relevant here, comparably situated to the TIS-I inmates at issue in *Tucker.* We conclude that the legislature intended that the sentence adjustment statute apply to enhanced misdemeanor prison terms, even though the legislature did not specify an "applicable percentage" for that category. What remains is determining the "applicable percentage."

██

¶ 43. All of the State's arguments regarding the "applicable percentage" are made in the context of arguing that the lack of an expressly specified "applicable percentage" for enhanced misdemeanor prison terms either (1) shows that the plain language of the sentence adjustment statute excludes such prison terms or (2) shows the legislature's intent that such prison terms be excluded. Having disposed of these arguments, we perceive no dispute that the only "applicable percentage" for enhanced misdemeanor prison

167

terms that makes sense is 75%. As Anderson explains, enhanced misdemeanants facing a total two-year prison term are similarly situated to Class I felons facing a total three-and-one-half-year sentence. Both face an initial maximum term of confinement of eighteen months. *See* WIS. STAT. § 973.01(2)(b)9. and 10. Because the "applicable percentage" for Class I felonies is 75%, and because 75% is the lowest "applicable percentage" specified by the legislature, the most reasonable assumption is that the legislature intended that 75% applies to enhanced misdemeanants. Accordingly, the "applicable percentage" for enhanced misdemeanants serving prison terms is 75%.

### *Conclusion*

¶ 44. For the reasons above, we reverse the circuit court's order denying Anderson's petitions for sentence adjustment. Given Anderson's mootness concession, we see no need for further proceedings.

*By the Court.*—Order reversed.